809 A.2d 653

**Anthony GALLOWAY**

**v.**

**STATE of Maryland.**

**No. 120, Sept. Term, 2001.**

Court of Appeals of Maryland.

Oct. 11, 2002.

■■■■

Anne K. Olesen, Washington, DC, for appellant.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

On June 19, 2000, Anthony Galloway ("appellant") was charged by the State in a single indictment, relating to the nonfatal shooting of Robert Knox, with nine counts of criminal conduct, including attempted murder, assault, reckless endangerment, use of a handgun in the commission of a felony or crime of violence, carrying a handgun (counts 1 through 7) and possession of a firearm after having been convicted previously of a crime (counts 8 and 9).[1] On March 20, 2001, in a pretrial

---

1. Appellant was indicted by the State on the following charges: (1) attempted murder in the first degree, Md.Code (1957, 1996 Repl.Vol.), Article 27, § 411A(b); (2) attempted murder in the second degree, Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 411A(a); (3) first degree assault, Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 12A-1; (4) second degree assault, Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 12A; (5) reckless endangerment, Md.Code (1957, 1996 Repl. Vol., 2001 Supp.), Art. 27, § 12A-2; (6) use of a handgun in the commission of a felony or crime of violence, Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 36B(d); (7) wearing, carrying, or transporting a handgun, Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 36B(b); (8) possession of a regulated firearm after a conviction of any violation classified as a common law offense where the person received a term of imprisonment of more than two years, Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 445(d)(1)(iv); and (9) possession of a regulated firearm after a conviction of any violation classified as a misdemeanor that carries a statutory penalty of more than two years, Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 445(d)(1)(iii). Unless otherwise provided, all statutory references

hearing in the Circuit Court for Baltimore City, appellant's counsel expressed concern over the prejudicial impact of appellant's prior criminal record, an element of counts 8 and 9, on the remaining seven charges. As a result, without objection from the parties, the trial court created a special procedure[2] where, in the same criminal trial a jury would determine the guilt of appellant in respect to counts 1 thru 7, and the trial judge would determine the guilt of the appellant in respect to counts 8 and 9. Trial proceedings began later that same day. During the two-day trial the judge and the jury heard evidence on counts 1 through 7 simultaneously, with evidence of appellant's prior convictions relating to counts 8 and 9 heard only by the judge.[3] At the request of appellant, and over the objection of the State, the court deferred its verdict on counts 8 and 9 until after the jury returned its

---

to the respective charges as provided in the indictment against appellant are as designated above.

2. Appellant moved for severance of charges in his pretrial motions pursuant to Maryland Rules 4–252 and 4–253, seeking two separate trials, one for counts 1 through 7 collectively and another for counts 8 and 9 collectively. *See* Md. Rule 4–252 (concerning motions in the circuit court); Md. Rule 4–253(c) (providing that "[i]f it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires"). The trial court, instead of fully granting the motion to sever and scheduling a separate trial of counts 8 and 9, approved of the unusual procedure.

3. During the jury trial, but out of the hearing of the jury, the State introduced to the court evidence of appellant's prior convictions. The predicate conviction underlying count 8 (possession of a regulated firearm after a conviction of any violation is classified as a common law offense where the person received a term of imprisonment of more than two years) stemmed from appellant's prior conviction on September 29, 1993 in the Circuit Court for Anne Arundel County for battery. The predicate conviction underlying count 9 (possession of a regulated firearm after a conviction of any violation classified as a misdemeanor that carries a statutory penalty of more than two years) stemmed from appellant's prior conviction on March 24, 1992 in the District Court of Maryland, sitting in Baltimore City for possession of a controlled dangerous substance.

verdict on counts 1 through 7.[4]  On March 21, 2001, the jury found appellant "not guilty" on counts one through seven. The following day, the court returned its verdict of "guilty" as to counts 8 and 9.

At sentencing, the court merged count 9 into count 8, and sentenced appellant to five years incarceration, of which one year was suspended and two years were converted to supervised probation.  Appellant filed a motion for new trial, which was denied by the trial court in a memorandum dated July 27, 2001.  Appellant then filed a notice of appeal to the Court of Special Appeals.  This Court issued a writ of certiorari, bypassing the Court of Special Appeals, to answer the following questions:

> "1.  Whether under both the Double Jeopardy Clause of the Fifth Amendment and the Maryland common law, the jury's acquittal barred the trial court's contrary verdict on the issue of possession.[5]

---

4.  On two separate occasions during the course of the trial, appellant asked the court to defer delivering its verdict on counts 8 and 9 until the jury returned its verdict on counts 1 though 7.  The State objected on both occasions, arguing that the court's deliberation on the two counts before it had "nothing to do with the jury's deliberation" on counts 1 through 7, and that each trier of fact should announce its verdict at the time the verdict is reached, and not in accordance with some predetermined sequence.  The court ultimately acquiesced to appellant's request.  The sequence in which the verdicts were returned has little bearing on our decision.

5.  "[U]nder both the Fifth Amendment [to the United States Constitution] and Maryland common law, it is established that the doctrine of collateral estoppel is embodied in the double jeopardy prohibition." *Ferrell v. State,* 318 Md. 235, 241, 567 A.2d 937, 940 (1990) (alterations added).  *See Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469, 476 (1970) (holding that collateral estoppel is "embodied in the Fifth Amendment guarantee against double jeopardy"). While the doctrines of double jeopardy and collateral estoppel are related, the analytical focus of each is distinct.  On the one hand, the doctrine of double jeopardy precludes re-prosecution of the *same offense.*  On the other hand, the doctrine of collateral estoppel prohibits re-litigation of the *same factual issue.  See Apostoledes v. State,* 323 Md. 456, 463–64, 593 A.2d 1117, 1121 (1991).

2.  Whether the trial court erred by rendering an inconsistent verdict and improperly shifting the burden of proof."

The procedure utilized by the circuit court, *i.e.*, the bifurcation of the decision making function between a jury and a judge in respect to different counts of a single indictment in a single trial is not expressly authorized in Maryland, or anywhere else as far as our research has revealed. In our discussion we will briefly examine the previously accepted method for severing counts of indictments into separate cases. We shall ultimately hold that in criminal cases where the circumstances and fact issues alleged are identical, a guilty verdict, or its equivalent, by the court, that is inconsistent with a jury verdict of acquittal, is, generally, impermissible.

The facts of this case are uncontroverted, the parties having agreed to proceed on the statement of facts presented in appellant's brief pursuant to Maryland Rule 8–501(g).[6] The facts as presented in appellant's brief are:

"In the early morning hours of September 1, 1997, nineteen-year-old Robert Knox was shot in the foot. He claimed that he was sitting on the steps of an abandoned house with five or six friends from the neighborhood, when thirty-five year old [appellant] came out of his mother's house, several doors down, and shot him. At trial, Mr.

---

**6.** Maryland Rule 8–501(g) provides that "[t]he parties may agree on a statement of undisputed facts that may be included in a record extract or, if the parties agree, as all or part of the statement of facts in the appellant's brief." This does not mean, however, that a reviewing appellate court is foreclosed from examining the record for relevant evidence not mentioned by the parties in the agreed statement of facts. *See Anderson v. State,* 282 Md. 701, 703 n. 1, 387 A.2d 281, 283 n. 1 (1978) (noting that the "agreed statement of facts" was "supported by the record"); *State v. Kidd,* 281 Md. 32, 46, 375 A.2d 1105, 1113 (1977) (reviewing the "agreed statement of facts and record extract"); *CES Card Establishment Servs. v. Doub,* 104 Md.App. 301, 305 n. 1, 656 A.2d 332, 334 n. 1 (1995) ("Pursuant to Md. Rule 8–501(g), the parties have agreed upon a statement of facts. The purpose of the rule is to avoid the cost and expense of producing a record extract. Nothing in the rule, however, prevents us from considering facts in the record that were not mentioned in the agreed statement of facts.").

Knox was the only witness who identified [appellant] as the shooter. The prosecution theorized that [appellant] shot Mr. Knox in retaliation for an incident several hours earlier in which Mr. Knox 'borrowed' [appellant's] bicycle without asking. The defense challenged the credibility of Mr. Knox, who had a criminal record for drug distribution and theft, and emphasized the State's failure to investigate or call any of Mr. Knox's friends who were present during the bicycle incident and the shooting. The defense argued that Mr. Knox, who was angry with [appellant] for calling the police on him, was motivated to testify falsely. The jury acquitted [appellant] of all seven counts before it, including the charge for carrying a handgun. The next day, [the trial court judge] found [appellant] guilty of the two firearm possession counts before her.

"Officer Aaron Robinson testified that around midnight on the day of the incident, [appellant] flagged him down, reporting that someone had borrowed his bicycle and not returned it. The two caught up with Mr. Knox and several of his friends. Officer Robinson demanded that Mr. Knox return the bike to [appellant], and threatened to lock up Mr. Knox for theft. When Mr. Knox returned the bicycle, Officer Robinson considered the incident resolved with a 'simple intervention' and left the scene.

"Mr. Knox, however, who was 'pretty mad' at [appellant] for calling the police, confronted [appellant] declaring: 'That's messed up you called the police on me.' As [appellant] started biking back towards his mother's house at 1010 North Carrie Street, Mr. Knox and his friends walked in the same direction. According to Mr. Knox, one of his friends, 'Monk,' said something to [appellant]. Mr. Knox and [appellant] then had 'little words,' and exchanged 'profanity toward each other.'

"An hour or two later, Mr. Knox and his friends, who had all been drinking 'E&J' brandy, sat in front of an abandoned home at 1000 North Carrie Street, a few houses down from [appellant's mother's] house. Mr. Knox acknowledged that he lived several blocks away, and claimed he 'just happened

to park' himself at that spot. According to Mr. Knox, he had been there for about twenty minutes when [appellant] came out of his mother's house. One of Mr. Knox's friends, 'Tay,' went over to speak with [appellant]. After [appellant] went back inside, 'Tay' returned to where Mr. Knox was sitting and told him 'everything is going to be all right.' Mr. Knox claimed that about a minute later, [appellant] came out of the house with a handgun, and shouted at him. As he tried to run away, [appellant] started shooting. Mr. Knox testified that his friends were there and 'they saw everything.' At the same time, he claimed that none of his friends saw who fired the gun because they 'had [their] backs turned when [they] heard the shots rang off' and 'everybody ran.' He also insisted he did not know his friends' names except the nicknames of 'Tay' and 'Monk.'

"After being shot in the foot, Mr. Knox ran seven blocks to his girlfriend's house. When the ambulance and police came, they took Mr. Knox back to North Carrie Street before taking him to the hospital, and Mr. Knox pointed to the house at 1010 North Carrie Street, indicating where the shots were fired. Detective Brenda May responded to a call about an incident four blocks over from North Carrie Street. However, when she got to the location of the reported incident, the dispatcher instructed her to report to 1010 North Carrie Street instead. Detective May investigated the area and found a 0.25 caliber casing in front of 1014 North Carrie Street in the middle of the street about a foot from the curb. She ascertained [appellant's] name as a possible suspect, obtained his photograph, and arranged a photo array. She then went to the hospital, where Mr. Knox pointed to [appellant's] photograph and identified [appellant] as the person who shot him.

"Detective May, who had been a police officer for nineteen years with seven years on the violent crimes task force, did not investigate any other witnesses or possible suspects, although Mr. Knox told her he was with some friends at the time of the incident. Detective May acknowledged she did not even ask Mr. Knox for the names of his friends because

'from her experience a lot of people are reluctant to give up names of the people that are with them because they don't want the police harassing or bothering or going to their houses.' There was no evidence that investigators performed any tests on the casing to determine when it had been fired or how long it had been on the street, and no gun was found. Detective May obtained a warrant for [appellant's] arrest, but did not serve it because [appellant] was not at 1010 North Carrie Street when the police arrived.

"The jury acquitted [appellant] on counts one through seven on March 21, 2001. The following day, the Court returned a guilty verdict as to counts 8 and 9." [Some alterations added.]

Appellant contends that the issues presented in this appeal arose from the "unique procedural context" in which appellant was tried, which consisted of a "unified proceeding with a hybrid decision, part jury trial and part court trial." [7] Relying on principles of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution and Maryland common law, appellant asserts that the finality of his acquittal by the jury on the charge of carrying a handgun (count 7) precluded any consideration by the trial judge of the "same offense" of possessing a firearm (counts 8 and 9). In the alternative, appellant, relying on *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), argues that collateral estoppel bars the State from "re-litigating a fact that previously ha[d] been resolved in [his] favor." [8] Appellant also

---

7. This trial procedure was described by the prosecutor as follows:

   "[T]he way it's often done, is that the case ... proceeds in front of a jury. And it is also proceeding in front of [the trial judge]. And outside of the hearing of the jury, at the close of the State's case ... the State can admit to the [c]ourt the two true test copies of the convictions that are the subjects of those two counts.... And once the jury has made it's [sic] ... finding ... as far as the guilt or innocence on the counts submitted to it, the [c]ourt could make its' [sic] [decision], [h]aving heard all the same evidence which would be presented.... [T]he Judge just sits, and the jury has no idea obviously that it's [the simultaneous trial is] going on."

8. *See supra* footnote 5.

contends that the trial court's verdict on counts 8 and 9 violated Maryland's common law prohibition against inconsistent court verdicts, and that the trial court violated his federal and state due process rights when it improperly shifted the burden of proof to appellant by requiring him to provide an alternative theory of the crime.

The State asserts that appellant is "not entitled to raise a double jeopardy or collateral estoppel bar" when it was "he who requested the simultaneous court and jury trial and he who asked the court to delay its verdict until the jury had rendered [its]."[9]   Moreover, the State asserts that double

---

**9.**   Initially, the appellant made a normal motion to sever the counts for a separate trial.  The State objected, asserting that the potential prejudice could be addressed by way of instruction.  After the State objected, the following occurred:

> "[Appellant's Counsel] ... Mr. Galloway advises he'd be willing to waive his right to a jury trial on counts 8 and 9."

At this point there is no indication that appellant's counsel is doing anything other than agreeing to waive his jury trial rights in a subsequent trial on the severed counts.  At that point the State asked permission of the trial court to confer with the appellant's counsel. After that conference the State addressed the court:

> "[The State] ... if counsel and the defendant are willing to waive their right to a jury trial on the last two counts and proceed before the Court on those, the State will not object to severing those two counts from the indictment".

At this point it is, at the least, unclear that there is to be a simultaneous single trial.  The State is agreeing to sever the counts "from the indictment".  If they were actually severed, they would no longer be in this case, but would normally constitute a separate criminal case. Appellant's counsel then proceeds with a jury trial waiver inquiry of his client, concluding:

> "[Appellant's Counsel] We are going to have a jury trial with respect to Counts 1 through 7.  Counts 8 and 9, however, it's my understanding you're willing to give up your right to a jury trial and let Judge Allison decide your guilt or innocence.... Are you willing to give up your right to a jury trial as to these last two counts?"

While the docket entries reflect that the trial court granted the motion to sever, the transcript is silent on that issue, only reflecting that the trial court accepted a waiver of jury trial rights on counts 8 and 9.

The parties than proceeded on with what occurred below.  Had counts 8 and 9 been properly severed, and been the focus of a separate bench trial, the same, or a very similar litany may well have been employed.  From the litany alone, it is not entirely clear what was

jeopardy prohibitions, including the collateral estoppel version of double jeopardy, do not apply because the proceeding was a single trial, proffering as authority a quote from our case of *Farrell v. State*, 364 Md. 499, 504, 774 A.2d 387, 390 (2001), "The double jeopardy prohibition protects a criminal defendant from successive prosecution." The State then argues in its brief in this case that "He [appellant] was not retried by either a judge or a jury at a successive trial. Rather, he was merely found guilty on two *different* counts by a judge in the *same* trial." (Emphasis in the original). It is clear, therefore, that the State considered this to be a single trial, and argues, for that specific reason, that double jeopardy principles do not apply in the first instance.

With regard to appellant's claims of trial court error, the State additionally disputes the applicability of the rules governing inconsistent verdicts in the present case, and further denies that the trial court erroneously shifted the burden of proof.

## General Discussion

### *Double jeopardy*

As indicated above, it is the State's position that double jeopardy and collateral estoppel issues are not applicable because what occurred here happened in the same single case, and that the principles of double jeopardy (however manifested) apply only to matters relating to subsequent litigation. While we do not necessarily agree that double jeopardy violations can only occur in subsequent litigation, under the facts of this case we shall not directly rely on double jeopardy principles but on Maryland common law principles. We note that there are federal cases that at first glance appear to support the State's position in respect to double jeopardy. In *Ashe v. Swenson*, 397 U.S. 436, 442–46, 90 S.Ct. 1189, 1193–95, 25

---

going on and it is certainly not clear *that it was appellant who requested* a simultaneous jury and bench trial. In any event, given our decision, the clarity of the litany and the question of which party initiated a consideration of this procedure have little relevance.

L.Ed.2d 469, 475–77 (1970), the United States Supreme Court stated:

"The question is no longer whether collateral estoppel is a requirement of due process, but whether it is part of the Fifth Amendment's guarantee against double jeopardy. . . .

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties *in any future lawsuit.* Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law. . . . As a rule of federal law, therefore, 'it is much too late to suggest that this principle is not fully applicable to a *former judgment in a criminal case,* either because of lack of "mutuality" or because the judgment may reflect only a belief that the Government had not met the higher burden of proof exacted in such cases. . . .'

. . .

"The ultimate question to be determined, then, in light of *Benton v. Maryland, supra,* is whether this established rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy. We do not hesitate to hold that it is. For whatever else that constitutional guarantee may embrace, it surely protects a man who has been acquitted from having to 'run the gantlet' a second time.

"The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury *to litigate that issue again.*" [Citations omitted.] [Footnote omitted.] [Emphasis added.]

This Court consistent with *Ashe,* opined in *Butler v. State*
335 Md. 238, 253, 643 A.2d 389, 396 (1994), that:

"....('Collateral estoppel is part of the Fifth Amendment's
double jeopardy guarantee...'). Collateral estoppel is also
an established component of Maryland's common law. *See
Ford v. State,* 330 Md. 682, 719, 625 A.2d 984, 1002
(1993)....

" '[W]hen a[n] issue of ultimate fact has once been
determined by a valid and final judgment, that issue cannot
again be litigated between the same parties in any *future*
lawsuit.' " [Some citations omitted.] [Emphasis added.] [10]

We went on to state in *Butler,* 335 Md. at 253–54, 643 A.2d at
396, that:

"Although collateral estoppel is usually invoked upon a
prior acquittal, the critical consideration is whether an issue
of ultimate fact has been previously determined in favor of
the defendant. As we stated in *Ford v. State,* collateral
estoppel 'analysis focuses on what the fact finder did find or
must have found.' ('Collateral estoppel is concerned ... not
with the legal consequences of a judgment but only with the
*findings of ultimate fact,* when they can be discovered, that
necessarily lay behind that judgment.') ('Collateral estoppel
... is stubbornly fact-bound')." [Citations omitted.]

We stated in *Ford, supra,:*

"Maryland common law also recognizes the collateral
estoppel form of double jeopardy. This common law collat-

---

**10.** However, this Court and the Court of Special Appeals have recog-
nized that, under some circumstances, collateral estoppel can apply in a
single proceeding. *See Ford v. State,* 330 Md. 682, 719, 625 A.2d 984,
1002 (1993); *Wright v. State,* 307 Md. 552, 576, 515 A.2d 1157, 1169
(1986); *Brooks v. State,* 299 Md. 146, 155, 472 A.2d 981, 986 (1984)
("Another trial was barred here by the common law prohibition against
double jeopardy recognized in this State."); and *Curtis Williams v.
State,* 117 Md.App. 55, 69–71, 699 A.2d 473, 480–81 (1997). *Ford,
Wright* and *Brooks* involved the granting of motions for acquittals
creating inconsistencies with subsequent jury actions in the merit
phases of the same cases. *Curtis Williams* involved appellate action
subsequent to the merits stage, that created inconsistencies. In each
case the inconsistencies raised double jeopardy questions.

eral estoppel 'prevents the State from litigating a second time an issue of ultimate fact where there has already been a final determination of that issue in the accused's favor.' *Cousins v. State,* 277 Md. 383, 398, 354 A.2d 825, 834, *cert. denied,* 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976) (citing *Ashe).* ... It may apply both to subsequent trials and within the same trial. *Brooks v. State,* 299 Md. 146, 155, 472 A.2d 981, 986 (1984).... " *Ford,* 330 Md. at 719, 625 A.2d at 1002.

*Ford, Wright,* which we discuss more fully *infra,* and *Brooks,* stand for the proposition that collateral estoppel, under certain circumstances, can apply in the same case. But, the cases involved limited sets of circumstances, *i.e.* trial judges granting judgments of acquittal on some counts based upon an insufficiency of particular evidence, yet subsequently letting other counts go to the jury where they also depended upon that same particular evidence being sufficient. The procedural circumstances in *Ford, Wright, Brooks* and *Curtis Williams,* were significantly different than the circumstances of the present case.

At least in the traditional sense, the concept of double jeopardy, whether it be actual double jeopardy that precludes re-prosecution of offenses or re-litigation of issues as in collateral estoppel, usually contemplates a subsequent, or at least a different, case in which verdicts are rendered or material issues determined. It will not in this case be necessary to consider expanding the limited single case applications of collateral estoppel principles recognized in the particular circumstances of *Ford, Wright, Brooks,* and *Curtis Williams.* While it may be argued that what occurred here is some type of mutant subsequent prosecution in that the jury was excused before the verdict of the court was rendered, and, thus, the guilty verdict of the trial court violated the issue preclusion effect of collateral estoppel because it was a subsequent case, and, therefore, the court's verdict should be reversed on double jeopardy grounds, it will not be necessary in this case to either approve or disapprove of the procedure utilized below, although we shall, where necessary, discuss it further.

We shall reverse for other reasons, that we shall hereafter discuss. In doing so, we will not directly reach the constitutional issue of double jeopardy or constitutional collateral estoppel.

First we discuss the method expressly provided for by the Maryland Rules in respect to the prejudicial effect of multiple counts.

*Severance*

Potential prejudice is a fundamental concern underlying a court's consideration of joint or separate trials for a defendant charged with multiple criminal offenses. *See State v. Kramer,* 318 Md. 576, 583, 569 A.2d 674, 677–78 (1990) ("Potential prejudice is the overbearing concern of the law of this State with respect to the question of joint or separate trials of a defendant charged with criminal offenses."); *Frazier v. State,* 318 Md. 597, 607, 569 A.2d 684, 689 (1990). The Maryland Rules are not silent on the matter of joinder and severance of counts in the same, or in different cases. Md. Rule 4–253(c) addresses "Prejudicial joinder [11]," and specifically states:

"**Rule 4–253. Joint or separate trials.**

"(b) **Joint trial of offenses.** If a defendant has been charged in two or more charging documents, either party may move for a joint trial of the charges. . . .

"(c) **Prejudicial joinder.** If it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires." [Emphasis added.]

---

11.  " 'Prejudice' within the meaning of Rule 4–253 is a 'term of art,' and refers only to prejudice resulting to the defendant from the reception of evidence that would have been inadmissible against that defendant had there been no joinder." *Ogonowski v. State,* 87 Md.App. 173, 186–87, 589 A.2d 513, 520 (1991) (citing *Osburn v. State,* 301 Md. 250, 254–55, 482 A.2d 905, 907 (1984)).

The rule does not further define what is meant by "separate trials." The rule does not specifically permit or prohibit the bifurcation of a single trial.

It is clear that, at least where separate trials of separate counts are being considered, the decision to join or sever charges ordinarily lies within the sound discretion of the trial court. *See Frazier*, 318 Md. at 607, 569 A.2d at 689; *Grandison v. State*, 305 Md. 685, 705, 506 A.2d 580, 589 (1986); *but see McKnight v. State*, 280 Md. 604, 612, 375 A.2d 551, 556 (1977) (mandating severance where a defendant charged with similar but unrelated offenses establishes that "the evidence as to each individual offense would not be mutually admissible at separate trials"). In its consideration of joinder (and thus of severance), a trial court weighs the conflicting considerations of the public's interest in preserving judicial economy and efficiency against unduly prejudicing the defendant. *See Frazier*, 318 Md. at 608, 569 A.2d at 689 (observing that "the likely prejudice caused by the joinder [of similar offenses, tried before a jury], must be balanced against the considerations of economy and efficiency in judicial administration") (citing *McKnight*, 280 Md. at 609–10, 375 A.2d at 555); *accord Conyers v. State*, 345 Md. 525, 548, 693 A.2d 781, 792 (1997) (noting that "joinder of offenses, traditionally, has been justified on the basis that a single trial effects an economy, by saving time and money, to the prosecution, the defendant, and the criminal justice system") (internal quotations omitted) (citation omitted).

Ultimately, a trial judge has a duty to ensure that the defendant receives a fair trial and to guard against injustice. *See McKnight*, 280 Md. at 608, 375 A.2d at 554 (discussing the common law test for prejudicial joinder and explaining that, "the courts will guard against injustice and abuse whenever apparent") (internal quotations omitted) (citation omitted); *accord Wanzer v. State*, 202 Md. 601, 608, 97 A.2d 914, 917 (1953) (discussing the courts' discretion in matters of trial joinder, and noting that "[t]here is no rigid rule, and the only limitation is that courts will guard against injustice"). Evi-

dence of other crimes is inherently prejudicial because of its tendency to show that the defendant is predisposed to continue criminal behavior. Such evidence would generally be inadmissible unless circumstances of special relevance, other than proving a mere propensity to commit crime, are present. *See, e.g., Ross v. State,* 276 Md. 664, 669, 350 A.2d 680, 684 (1976) ("The [S]tate may not present evidence of other criminal acts of the accused unless the evidence is 'substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.'" (citation omitted)). In the present case, evidence that the appellant was a felon, although especially relevant and admissible as to counts 8 and 9, undoubtably would have been prejudicial in respect to the remaining counts of the indictment.

While this Court has recognized the curative effect of a properly cautioning jury instruction under circumstances similar to the case *sub judice,*[12] and has recognized that trial courts can, under appropriate circumstances, avoid improper prejudice by severing counts for a subsequent trial, we have never been presented with the type of proceeding utilized at the merits trial in this case.

We note that the present case is an instance of a hybrid jury/bench trial on the merits. In an appropriate case[13] we might necessarily be faced with an initial question of whether a trial judge has the discretion to grant the single trial procedure used in the instant case. We shall not resolve that issue in this case, as the case can be fully resolved on other important issues. Our declining to address this specific bifurcation issue, should not be construed as any approval or

---

**12.** *See Frazier,* 318 Md. at 612, 569 A.2d at 691 (finding limiting jury instructions adequate to ensure the jury's proper consideration of a defendant's prior conviction in a felon-in-possession charge on a multicount indictment arising from a single incident).

**13.** Such a case would be one where we would have no choice but to reach the issue.

disapproval of the procedure.[14]

There are situations where we have disapproved of hybrid processes in the criminal courts. In respect to the exercise of the right to counsel we have, generally, disapproved hybrid representation. In *Parren v. State*, 309 Md. 260, 263, 523 A.2d 597, 598 (1987), we noted, in a Sixth Amendment context, that "[t]he right of self-representation is independent of the right to assistance of counsel. The rights 'are mutually exclusive and the defendant cannot assert both simultaneously.'" (citations omitted). We went on to say:

"There is no right vested in a defendant who has effectively waived the assistance of counsel to have his responsibilities for the conduct of the trial shared by an attorney.... As we have noted, the right to counsel and the right to defend pro se cannot be asserted simultaneously. The two rights are disjunctive. There can be but one captain of the ship, and it is he alone who must assume responsibility for its passage, whether it safely reaches the destination charted or founders on a reef." *Parren*, 309 Md. at 264, 523 A.2d at 599.

*See also Leonard v. State*, 302 Md. 111, 119, 486 A.2d 163, 166 (1985) ("the defendant cannot assert both simultaneously").

In respect to rights of counsel issues, federal courts have also spoken to the constitutionality of hybrid representation.[15] They have held that a criminal defendant does not have an absolute right to both self-representation and the assistance of counsel. *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir.1981); *United States v. Klee*, 494 F.2d 394, 396–97 (9th Cir.), *cert. denied*, 419 U.S. 835, 95 S.Ct. 62, 42

---

**14.** By copy of this opinion to the Standing Committee on Rules of Practice and Procedure (the "Rules Committee"), we shall notify it of this issue in order that the Rules Committee may study it, and if it deems appropriate, make recommendations to the Court. In that process there will be adequate opportunity for concerned entities to participate and make their views known in the study process.

**15.** The term "hybrid representation" describes the situation where a defendant seeks to participate as his own "co-counsel." *Parren*, 309 Md. at 264, 523 A.2d at 598–99 (*citing Callahan v. State*, 30 Md.App. 628, 633, 354 A.2d 191, 194 (1976)).

L.Ed.2d 61 (1974); *Duke v. United States,* 255 F.2d 721, 725–26 (9th Cir.), *cert. denied,* 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1365 (1958); *United States v. Daniels,* 572 F.2d 535, 540 (5th Cir.1978); *United States v. Sacco,* 571 F.2d 791, 793 (4th Cir.), *cert. denied,* 435 U.S. 999, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *United States v. Cyphers,* 556 F.2d 630, 634 (2d Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977); *United States v. Hill,* 526 F.2d 1019, 1025 (10th Cir.1975), *cert. denied,* 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976).

Other state courts have similarly interpreted the constitutionality of hybrid representation. *See People v. Bloom,* 48 Cal.3d 1194, 1218–19, 259 Cal.Rptr. 669, 774 P.2d 698, 712 (1989); *People v. Doane,* 200 Cal.App.3d 852, 863, 246 Cal. Rptr. 366, 371–72 (1988); *Gamble v. State,* 235 Ga.App. 777, 782, 510 S.E.2d 69,74–75 (1998); *People v. Dennany,* 445 Mich. 412, 441, 519 N.W.2d 128, 140 (1994); *State v. Small,* 988 S.W.2d 671, 673–74 (1999); *State v. Hegge,* 53 Wash.App. 345, 349, 766 P.2d 1127, 1129 (1989).

▆▆▆ Another situation where we have disapproved the hybridization of trial procedures (waiver of jury trial rights) is closer to the questioned procedure in the case at bar. In respect to the waiver of the right to trial by jury, Maryland Rule 4–246 contemplates that the entire trial be by jury, or by the court. Rule 4–246 provides:

"**Rule 4–246. Waiver of jury trial—Circuit court.**

"(a) **Generally.** In the circuit court a defendant having a right to trial by jury shall be tried by a jury unless the right is waived pursuant to section (b) of this Rule....

"(b) **Procedure for acceptance of waiver.** A defendant may waive the right to trial by jury at anytime before the commencement of trial. The court may not accept the waiver until it determines ... that the waiver is made knowingly and voluntarily."

As is readily clear, Rule 4–246 prescribes the process for waiving a jury "trial;" it does not expressly permit a defendant to pick and choose a mode of proceeding in respect to particu-

lar parts in a single trial on the merits, with both a jury and a court as fact-finders as to different counts of the same indictment.

We have generally considered the waiver of the right to be tried by a jury to be a waiver in respect to the entire merits trial, not portions of the trial. We noted in *Martinez v. State,* 309 Md. 124, 131, 522 A.2d 950, 953 (1987), "A defendant may waive his right to a jury trial and elect instead to be tried by the court." (citations omitted). We there addressed it as an either/or selection. In the one case having some similarity to the unusual situation of the present case, we held that it was a selection of one or the other. In *State v. Marsh,* 337 Md. 528, 654 A.2d 1318 (1995), we discussed the bifurcation of merits and criminal responsibility. Marsh had waived his right to a jury trial during the merits stage of his trial, but then attempted to have the matter of criminal responsibility decided by a jury. We held that he could not. In *Marsh,* we said:

> "Under this intricate scheme, when Marsh waived his right to a jury trial as to guilt or innocence, he was precluded thereby from seeking a jury determination as to criminal responsibility.... Thus under this Rule,[16] the election of a bench trial on the merits inevitably encompasses a waiver of jury rights as to criminal responsibility.

> "In this respect, the question of criminal responsibility is like every other issue to be decided in the cases. *See People v. Berutko,* 71 Cal.2d 84, 453 P.2d 721, 727, 77 Cal.Rptr. 217, 223 (1969) (jury waiver goes to all of the issues to be decided in the case)." *Marsh,* 337 Md. at 539, 654 A.2d at 1323. [Footnote added.]

*See also People v. Russell,* 195 Cal.App.2d 529, 532, 16 Cal. Rptr. 9, 11 (1961) ("It is settled that where a defendant waives a jury trial he is deemed to have consented to a trial of all the issues of the case before the court sitting without a jury.").

---

**16.** Md. Rule 4–314.

### Consistency of the verdicts

In the case at bar, there is no dispute that both the jury and the judge based their decisions as to appellant having the handgun, or not having it, on the same identical evidence. The evidence upon which both fact-finders relied was presented in a single evidentiary proceeding. Likewise, there is no dispute as to whether the verdicts were inconsistent. They are clearly inconsistent. At a given point in time, the jury held that appellant did not possess the handgun. The trial court necessarily held that, at the same given point in time, appellant, a felon, was in possession of the same handgun. The State argues that appellant waived his right to object to the inconsistency of the verdicts, regardless of the appropriateness of the procedure. We hold that, in the particular circumstances of this case, the inconsistent verdict of the court nullified the jury's verdict and was, thus, additionally inappropriate under Maryland common law principles.

As we have said, we have found no *direct* precedent for permitting inconsistent verdicts in the criminal law of this State (or of any state or the federal courts), where a verdict of a trial judge is inconsistent with the verdict of a jury in the same case. While the procedure utilized at trial in the present case was significantly different, on at least two occasions, in *Wright* and *Curtis Williams,* discussed *supra* and *infra,* Maryland's appellate courts have disapproved inconsistent verdicts in criminal cases where the inconsistency involved court action. Additionally, our appellate courts have addressed such issues between a jury and the court in a civil context relating to consistency requirements. We see no reason why the consistency requirements in criminal cases should be less stringent than the standards we have applied in civil cases. We shall first discuss our civil precedents.

A reading of those prior civil cases indicates that they support the proposition that a court verdict, based upon a trial judge's different interpretation of the same facts, should not be allowed to nullify a jury's interpretation of those facts and its resulting verdict, because, the nullification of the jury

verdict is the denial of a person's constitutional and common law right to be tried by a jury of his or her peers. Moreover, in that situation, where the jury and a judge render separate verdicts that are inconsistent with each other, the reasoning that supports the acceptance of inconsistent jury verdicts is not applicable.

The verdict being nullified in the present case is not the judge's verdict, it is the jury's verdict, especially in respect to count 7. As to that count, appellant did not waive his right to a jury trial. Whether appellant waived a jury trial on counts 8 and 9 (the counts upon which the judge rendered a verdict) in the context of the consistency issue, is simply not relevant to the issue of whether a jury's interpretation of the facts and its not guilty verdict in a criminal case can be overturned or nullified by a judge's different interpretation of the same facts that were presented only once in a single case to both triers of fact. More important, the reasons why inconsistent jury verdicts are tolerated simply do not apply when a judge is involved in rendering one of the inconsistent verdicts.

It makes no difference in criminal cases what the procedure is that results in the mingling of court and jury verdicts; inconsistent verdicts based on identical facts, are not permitted unless the inconsistency is solely a jury inconsistency. Additionally, when the verdicts of a court nullify a jury's verdict, a defendant's right to be tried by jury, has been improperly affected, or even nullified. At no time in the present case did appellant waive or give up his right to a jury's verdict on counts 1 through 7.

In *Edwards v. Gramling Engineering Corporation*, 322 Md. 535, 543, 588 A.2d 793, 797 (1991), in the context of a civil case with mixed questions of law and equity,[17] we stated:

"Federal courts have supplied guidance that assists us in our review of the instant case. First, federal courts have held that, where equitable claims are to be resolved by the court and legal claims are to be resolved by the jury, the

---

**17.** In *Edwards* we held that the verdicts were not inconsistent.

judge is ' "without power" to reach a conclusion inconsistent with that of the jury.' *Gutzwiller v. Fenik,* 860 F.2d 1317, 1333 (6th Cir.1988). Second, as the Supreme Court has recognized,

> 'Where there is a view of the case that makes a jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in collision with the Seventh Amendment.' *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 807 (1962)." [Some citations omitted.]

We went on in *Edwards* to point out that the jury's verdict could have been based on different factual circumstances than the court's *verdict.* "There are at least two possible scenarios under which a jury could find there was no conversion. . . . Under the second scenario, the jury's verdict for *Edwards* on conversion is consistent with the verdict for the Corporation on breach of fiduciary duty." *Id.* at 545, 588 A.2d at 798 (citations omitted). We concluded in *Edwards,* "In summary, the verdict of the jury in this case was not inconsistent with the equitable remedy fashioned by the trial judge." *Id.* at 554, 588 A.2d at 802–03.

In the present case, there is only one issue, one "scenario." Appellant, at the point in time at issue, was either carrying the weapon or he was not. The jury found that he was not carrying it; subsequently, based on the identical evidence presented only once in the same trial, the judge found that, at the identical point in time, he was. Unlike in *Edwards,* the judge's verdict in the case *sub judice* effectively nullifies the jury's verdict. It is, without question, inconsistent.[18]

---

18. In cases where severance has properly occurred, it may be possible that a subsequent court verdict might, at first glance, appear to be inconsistent, when, in fact, it is because the court was presented with a . significantly different set of facts, *i.e.,* if the facts that a court is relying on during the subsequent separate trial of properly severed counts are sufficiently different than the facts presented to the jury in the prior jury trial. An example might be where a felon is accused of accosting a

In *Higgins v. Barnes,* 310 Md. 532, 530 A.2d 724 (1987), one of the early civil cases where issues were presented concerning the simultaneous court and jury trials of law and equitable issues, we noted the deference due to the verdicts of the jury in respect to the facts of the controversy. There, we said:

"We hold that a trial court may not deny a defendant his right to a jury trial on the legal issues presented by his counterclaim simply because that counterclaim is raised in an equitable action. We are constitutionally required to 'inviolably preserve' the right of trial by jury in actions at law, and so 'where both legal and equitable issues are presented in a single case, "only under most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims." ' *Dairy Queen v. Wood, supra,* 369 U.S. at 472–73, 82 S.Ct. at 897 (quoting *Beacon Theatres, supra,* 359 U.S. at 510–11, 79 S.Ct. at 957)."

*Id.* at 551, 530 A.2d at 733. Thus, in *Higgins,* albeit a civil case, we held that even prior court verdicts must be subordinated to subsequent jury decisions. In the case *sub judice,* the contrary situation has occurred. A prior jury determination that appellant was not carrying or wearing the firearm and did not commit any of the offenses with which he was charged, is nullified, at least in substantial part, by a subsequent court decision based on the identical facts, that he was

---

person with a handgun, and, when the police are called, flees into a house. Subsequently, when, upon the arrival of the police, the felon is later arrested in the house the police might then discover a gun upon his person. At the jury trial the witnesses might testify that they observed no gun on his person. At the subsequent court trial the officers might testify that they recovered a gun upon his person. In that circumstance, a jury might find that at the time of the accosting on the street the felon had no handgun on his person and render a not guilty verdict in the case before it. At the court trial the judge might find that the felon illegally had a handgun on his person when arrested. In such circumstances it might be arguable that the verdicts are not inconsistent, but that argument, if viable, would be so because of differing factual contexts in separate cases. In the case *sub judice,* the facts relied upon by the differing fact-finders were presented simultaneously and were identical, and the differing verdicts were, under those factual circumstances, inherently inconsistent.

carrying the firearm. The position urged on the Court by the State does not "inviolably preserve" the right of criminal defendants to have the facts of their cases, and their guilt, assessed by a jury.

Once the jury determined that appellant was not wearing and carrying the handgun at the relevant point in time and found him not guilty of that charge, the trial court should have dismissed counts 8 and 9, which, under the circumstances here present, also required, in order to find appellant guilty, that appellant was in possession of the same firearms at exactly the same time.

Our view is additionally supported by a consideration of the criminal case of *Hoffert v. State*, 319 Md. 377, 572 A.2d 536 (1990). *Hoffert* involved only a jury trial where inconsistent verdicts are sometimes accepted; *i.e.*, there was no bifurcation of counts between the jury and the court. Moreover, the procedural circumstances were substantially different. Nonetheless, *Hoffert* offers comments that are somewhat relevant to the present case. The verdict form in *Hoffert* contained four charges: "1) Attempted murder in the first degree. 2) Attempted murder in the second degree. 3) Robbery with deadly weapon. 4) Use of a handgun in the commission of a crime of violence." *Id.* at 379, 572 A.2d at 537. After the jury rendered not guilty verdicts on the first three counts, the trial court asked the prosecutor if he wanted the jury polled and they were polled. The trial court then proceeded to "hearken" the verdict but had only "hearkened" the jury's verdict on the first count when the proceedings were interrupted by a juror who reminded the trial court that it had not taken the jury's verdict on the fourth count. The trial court then took the jury's verdict on that count and it was "guilty." Subsequently, the jury was re-polled on all four verdicts and they were all "hearkened." The argument was successfully made to the trial court that the inconsistent jury verdicts were permissible. We disagreed under the special circumstances of that case, albeit for procedural reasons, saying, in *Hoffert*, 319 Md. at 384–86, 572 A.2d at 539–41:

"[W]e observed in *Shell v. State*, 307 Md. 46, 53, 512 A.2d 358 (1986), 'commission of a felony or crime of violence is an essential ingredient of the § 36B(d) handgun offense. It is an element of the crime.' ... Thus, 'verdicts [of] not guilty of the crime of violence and guilty of use of a handgun in the commission of such a crime ... would be contrary to law....' Therefore, 'a trial court in a criminal case must, if requested by the accused, instruct a jury that an accused cannot be found guilty of use of a handgun in the commission of a crime of violence ... if found not guilty of a crime of violence.... Nevertheless, inconsistent verdicts by a jury 'are normally tolerated....' This is so because of the 'unique role of the jury, [and has] no impact whatsoever upon the substantive law explicated by the Court.'...

"It follows from our decisions that the instructions given the jury were in full accord with the law, but that the jury was free to ignore them.

. . .

"... What both the judge and the prosecutor overlooked was the effect of the not guilty verdicts on the viability of the trial.

"When the jury was polled on the verdicts of not guilty on the first three charges, and the poll disclosed that the verdicts were unanimous, the verdicts were final. The verdicts were legally proper.... The verdicts stood complete without a verdict on the handgun charge. The guilt stage of the trial was over at that point. The jury had no further function to perform. It had exhausted its power and authority and could not be called upon to exercise additional duties in the case. In short, the case was no longer within the province of the jury." [Citations omitted.] [Alterations in original.] [Footnote omitted.]

In the case at bar, the transcript contained in the extract indicates that on March 21, 2001, the jury rendered its verdicts of not guilty on all of the jury counts, including the not guilty verdict as to count 7, and the jury was then immediately

polled by the clerk who stated at the conclusion "Harken to the verdict as the Court has recorded it. . . ." The clerk continued until he had "harkened" all of the jury's verdicts. The jury was then excused. At this point, all of its verdicts were final and were consistent.

It was not until the next day, when the court reconvened, that it rendered its verdicts on counts 8 and 9. Under this Court's holding in *Hoffert*, even the jury could not have rendered those inconsistent verdicts after it was excused. The trial court's verdicts in the case at bar on counts 8 and 9 are clearly inconsistent with the jury's verdicts on the other counts.

The rationale for accepting inconsistent jury verdicts, which we noted in *Hoffert*, and other cases as well, that "[I]nconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and that continual correction of such matters would undermine the historic role of the jury as the arbiter of questions put to it" does not, and cannot, logically apply in the present circumstance. *Hoffert*, 319 Md. at 384–85, 572 A.2d at 540 (quoting *Shell v. State*, 307 Md. 46, 54, 512 A.2d 358, 362 (1986)). As far as we know, there is no other rationale for tolerating inconsistent verdicts in criminal cases. To approve what happened below would undermine the historic role of the jury as the arbiter of questions put to it. As important, in the present case it would serve to deprive the defendant of the jury's verdict, especially as to count 7, and would retroactively deprive the defendant of his right to a jury trial by nullifying the jury's verdicts of not guilty.

We held in *Shell*, 307 Md. at 52–58, 512 A.2d at 361–64 (1986), that:

"The State contends that *Ford v. State*, 274 Md. 546, 337 A.2d 81 (1975), and other cases, support the view that an accused may be convicted in a nonjury trial of the handgun offense under Art. 27, § 36B(d), even if the judge finds that the defendant did not commit the felony or crime of violence. We disagree.

"The defendant in *Ford* was tried before a jury.... If the jury determines that the accused did not commit a felony or crime of violence but is guilty of use of a handgun in the commission of such felony or crime of violence, the jury has obviously rendered inconsistent verdicts. The *Ford* opinion, while recognizing that the verdicts were inconsistent, upheld the conviction because of the many cases in this Court which had 'repudiated the assertion that *jury* verdicts must be consistent....' (*Ford, supra,* 274 Md. at 552, 337 A.2d 81, emphasis added).

"Later, in *Mack v. State,* 300 Md. 583, 479 A.2d 1344 (1984), we reviewed the *Ford* case as follows (300 Md. at 593–594, 479 A.2d 1344):

'Thus, this Court established ... [in *Ford* ] that in order to convict an accused of use of a handgun in the commission of a crime of violence it is necessary that the trier of fact find beyond a reasonable doubt that the accused committed a crime of violence. In essence, this Court recognized that when an accused is charged in a multi-count indictment with the commission of a crime of violence and use of a handgun in the commission of such a crime, a verdict of guilty of the crime of violence is a prerequisite to a verdict of guilty of use of a handgun in the commission of such a crime.

'Additionally, in *Ford,* this Court pointed out that if an accused is found guilty of both the crime of violence and use of a handgun in the commission of such a crime, the verdicts are consistent and they can both stand. If, however, there is a verdict of not guilty of the crime of violence and a verdict of guilty of use of a handgun in the commission of such a crime, the verdicts are inconsistent.'

"In light of these principles, the Court in *Mack* took the position that 'verdicts [of] not guilty of the crime of violence and guilty of use of a handgun in the commission of such a crime ... would be contrary to law,' *id.* at 595, 479 A.2d 1344. Consequently, we held that 'a trial court in a criminal case must, if requested by the accused, instruct a jury that an accused cannot be found guilty of use of a handgun in the

commission of a crime of violence under ... Art. 27, § 36B(d) if found not guilty of a crime of violence as defined in ... Art. 27, § 441(e).' *Id.* at 587, 479 A.2d 1344. The Court pointed out that the refusal to set aside the inconsistent jury verdicts in *Ford* was 'premised upon the unique role of the jury, [and] had no impact whatsoever upon the substantive law explicated by the Court.' *Id.* at 594–595, 479 A.2d 1344.

"Thus, convictions based on inconsistent jury verdicts are tolerated because of the singular role of the jury in the criminal justice system. . . . The general view is that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and that continual correction of such matters would undermine the historic role of the jury as the arbiter of questions put to it. *United States v. Powell,* 469 U.S. 57, 63–68, 105 S.Ct. 471, 476–478, 83 L.Ed.2d 461 (1984) (refusing to vacate conviction for using the telephone to facilitate drug crimes, of which defendant was acquitted by jury); *Ford, supra; Johnson, Etc. v. State,* 238 Md. 528, 541–545, 209 A.2d 765 (1965). *See also Williams v. State,* 204 Md. 55, 67–72, 102 A.2d 714 (1954) (discussing reasons for not questioning jury verdicts).

"In the present case, however, the inconsistent verdicts were rendered by a judge, not by a jury. The *Ford* holding does not justify inconsistent verdicts from the trial judge."

... The Court in *Johnson* then distinguished between inconsistent jury verdicts and inconsistent nonjury verdicts, and discussed with approval the opinion of the United States Court of Appeals for the Second Circuit in *United States v. Maybury,* 274 F.2d 899 (2d Cir.1960). The *Johnson* Court quoted from *Maybury* as follows (238 Md. at 543, 209 A.2d 765):

' "None of these considerations [justifying inconsistent jury verdicts] is fairly applicable to the trial of a criminal case before a judge. There is no 'arbitral' element in such a trial. While the historic position of the jury affords ample ground for tolerating the jury's assumption of the power to insure lenity, the judge is hardly the

'voice of the country,' even when he sits in the jury's place. * * * There is no need to permit inconsistency in the disposition of various counts so that the judge may reach unanimity with himself; on the contrary, he should be forbidden this easy method for resolving doubts. * * * We do not believe we would enhance respect for law or for the courts by recognizing for a judge the same right to indulge in 'vagaries' in the disposition of criminal charges that, for historic reasons, has been granted the jury. 274 F.2d at 903.' "

. . .

"The rule applied in the *Johnson* and *Maybury* cases, which distinguishes between inconsistent verdicts in a jury trial and such verdicts in a nonjury trial, has been adopted in other jurisdictions. *See, e.g., U.S. v. Duz–Mor Diagnostic Laboratory, Inc.,* 650 F.2d 223, 226 (9th Cir.1981); *Haynesworth v. United States,* 473 A.2d 366, 368 (D.C. 1984); *People v. Vaughn,* 409 Mich. 463, 295 N.W.2d 354 (1980); *People v. Williams,* 99 Mich.App. 463, 297 N.W.2d 702 (1980).

"Moreover, in light of our recent opinion in *Mack v. State, supra,* it would be the height of appellate inconsistency for us to depart from the principles of *Johnson* and *Maybury* and hold that inconsistent verdicts in nonjury trials will generally be permitted and will be sustained in the present case. It would make utterly no sense to require a trial judge to instruct the jury 'that an accused cannot be found guilty of use of a handgun in the commission of a crime of violence . . . if found not guilty of a crime of violence,' *Mack,* 300 Md. at 587, 596, 479 A.2d 1344, but to hold that the trial judge himself is permitted to ignore this rule.

"The case at bar is not one in which there is only an apparent inconsistency which in substance disappears upon review of the trial court's explanation. Unlike the situation in *Johnson,* the trial court's findings in this case are not consistent with the challenged guilty verdict. . . . In light of the *Mack, Ford* and *Johnson* opinions, the defendant Shell's

conviction of the § 36B(d) handgun offense must be reversed." [Citation omitted.] [Footnotes omitted.]

*Shell* is the leading criminal case in Maryland, and has become one of the leading cases in the country, in respect to consistent and inconsistent verdicts. We have cited its holdings on those issues in our cases of *Wright v. State,* 307 Md. 552, 576, 515 A.2d 1157, 1169 (1986) and *State v. Anderson,* 320 Md. 17, 29, 575 A.2d 1227, 1233 (1990) ("It is, however, settled in this State, as a nonconstitutional common law principle, that inconsistent verdicts of guilty and not guilty, by a trial judge at a nonjury trial, are not ordinarily permitted."). In *Wright,* 307 Md. at 576, 515 A.2d at 1169, we stated:

"The short answer to the Court of Special Appeals' reliance is that we are not in this case dealing with inconsistent action by a jury. Rather, the inconsistency was on the part of the trial court, in granting a motion for judgment of acquittal as to the underlying felony but submitting the felony murder theory to the jury. While inconsistent verdicts by a jury are normally tolerated, inconsistent verdicts by the court are not ordinarily permitted as a matter of Maryland common law." [Citations omitted.]

The Court of Special Appeals has frequently cited *Shell.* *See Stuckey v. State,* 141 Md.App. 143, 159, 784 A.2d 652, 661 (2001) ("Pellucidly inconsistent verdicts by a trial judge, under Maryland law, cannot stand"); *Bates v. State,* 127 Md.App. 678, 736 A.2d 407 (1999); *Curtis Williams v. State,* 117 Md.App. 55, 69–71, 699 A.2d 473, 480–81 (1997)[19]; and *Thomas Williams v. State,* 100 Md.App. 468, 473, 641 A.2d 990, 992 (1994) ("In a court trial, moreover, inconsistencies of neither variety will be countenanced.").

Other jurisdictions have also followed *Shell,* or have independently adopted a similar holding. The Court of Appeals of Kansas in *State v. Meyer,* 17 Kan.App.2d 59, 832 P.2d 357 (1992), quoted extensively from *Shell* and then noted that

---

**19.** *Curtis Williams* along with our case of *Wright* will be discussed at length later as we further explain our decision in respect to inconsistency of court and jury fact finding.

Michigan had also adopted that rationale. The Kansas court stated in *Meyer:*

"The Maryland Court of Appeals has concluded that inconsistent judgments in a criminal bench trial constitute reversible error. *See Shell* . . .

"The Michigan courts have rejected inconsistent judgments from a criminal bench trial. *See People v. Williams,* 99 Mich.App. 463, 465, 297 N.W.2d 702 (1980) . . . .

. . .

"We conclude the better approach, under the facts presented here, where the same document was involved at the same time with the same parties, is to reject such an inconsistent verdict in a criminal bench trial.

"The rationale for permitting inconsistent jury verdicts is simply not applicable to a bench trial under these circumstances. . . . A trial court is duty bound to apply the law in a nonarbitrary or [non-]capricious manner. A rule which would permit judgments which cannot be defended upon a logical basis would not enhance respect for the law, the courts, or the process. For an appellate court to uphold such a judgment, which on its face is illogical or arbitrary, would likely undermine respect for the courts." [Alteration added.]

*Id.* at 68–70, 832 P.2d at 363–65.

The Court of Appeals of Virginia, while recognizing that inconsistent verdicts in exclusively jury trials are acceptable,[20] expressly adopted our *Shell* holding in respect to criminal bench trials. In *Akers v. Commonwealth,* 31 Va.App. 521, 529–30, 525 S.E.2d 13, 17–18 (2000), that court opined:

"Juries may reach inconsistent verdicts through mistake, compromise, or lenity, but in such instances it is 'unclear whose ox has been gored,' the government's or the defendant's. . . .

---

**20.** *Gray v. Commonwealth,* 28 Va.App. 227, 232, 503 S.E.2d 252, 254–55 (1998).

"The issue of inconsistent verdicts implicates no constitutional guarantee. . . .

"Although we have not previously addressed the issue of inconsistent bench trial verdicts, we have commented on the issue . . . on at least two occasions. In *Wolfe*, 6 Va.App. at 650 n. 3, 371 S.E.2d at 319 n. 3, we noted that nothing in our opinion was 'intended to address inconsistent verdicts rendered by a trial judge in a single criminal trial.' Citing *Shell v. State*, we indicated our belief that 'the principles stated [in *Wolfe*] are [not] applicable to such cases. More recently, in *Elmore v. Commonwealth*, 22 Va.App. 424, 427, n. 1, 470 S.E.2d 588, 589 n. 1 (1996), we assumed without deciding 'that inconsistent verdicts in a bench trial are grounds for reversal in Virginia.' We again cited the decision of Maryland's highest court in *Shell* as representative of the decisions of other jurisdictions that 'the considerations that may justify inconsistent jury verdicts do not apply in a bench trial.'

"We now expressly adopt, as applicable to elemental inconsistency in bench trial verdicts, the basic rationale applied by Maryland's highest court in *Shell*." [Some citations omitted.] [Footnote omitted.]

The Virginia Court of Appeals reaffirmed its position adopting our *Shell* holding in its later case of *Cleveland v. Commonwealth*, 38 Va.App. 199, 562 S.E.2d 696 (2002).

As we have indicated, we have found no cases anywhere in which a single criminal case is bifurcated in a fashion where a jury first determines whether a defendant is guilty of some of the counts, and then a judge, as a fact-finder, based upon the same evidence simultaneously presented in the same case, subsequently determines a defendant's guilt as to other counts.[21] There are, however, at least two Maryland criminal

---

21. There are of course instances where cases are bifurcated so that the same fact-finder can first determine whether an offense has occurred, and then is later required to determine whether the offender is a felon or a habitual offender. There are also cases where as a part of

cases where this Court, and the Court of Special Appeals, have addressed the effect of courts' actions in criminal cases that resulted in inconsistencies with jury verdicts. Our case of *Wright, supra,* involved the granting by a trial court of a motion for judgment of acquittal on the underlying felony and a jury's subsequent guilty verdict on the felony murder charge. In *Wright,* as is obvious, the result was an inconsistency in verdicts. In the Court of Special Appeals' case of *Curtis Williams, supra,* that court, on appeal, vacated a conviction of one offense for which a defendant had been found guilty by a jury. The result was an inconsistency of verdicts. Both *Wright* and *Curtis Williams,* involved combined decisions at different stages of a single proceeding-a jury verdict and a trial judge's granting of a motion for acquittal in *Wright,* and a jury verdict and subsequent appellate judges' decision in *Curtis Williams.*

We said in *Wright,* 307 Md. at 576–78, 515 A.2d at 1169–70:

"The Court of Special Appeals also relied upon the rule that jury verdict consistency is 'not mandated by our law' and furnishes no ground for reversal. While agreeing with Wright's argument that the judgment of acquittal on the underlying attempted robbery and the conviction of felony murder 'were inconsistent,' the Court of Special Appeals responded that 'it is immaterial.' The short answer to the Court of Special Appeals' reliance is that we are not in this case dealing with inconsistent action by a jury. Rather, the inconsistency was on the part of the trial court, in granting a motion for judgment of acquittal as to the underlying felony but submitting the felony murder theory to the jury. While inconsistent verdicts by a jury are normally tolerated, inconsistent verdicts by the court are not ordinarily permitted as a matter of Maryland common law.

"Moreover, we recognize that, as a general principle, inconsistent verdicts on different counts at a nonjury trial are not precluded by the federal constitution, at least when

---

sentencing a judge, alone, may be required to determine the existence of prior criminal conduct in respect to a conviction rendered by a jury.

the guilty verdict 'is supported by sufficient evidence and is the product of a fair trial.' Notwithstanding the ordinary federal constitutional inconsistent verdict rule, we doubt that a conviction for felony murder, after an acquittal of the underlying felony on the ground that the State's proof was insufficient, and after the trial judge expressly stated that 'there is not sufficient evidence to require the Defendants to put on a defense with respect to the' underlying felony, could be squared with federal double jeopardy or due process principles. . . .

"We conclude, therefore, that both under the Double Jeopardy Clause of the Fifth Amendment and, independently, under Maryland common law double jeopardy principles, the defendant Wright's conviction for felony murder must be reversed. In addition, because his conviction for using a handgun in the commission of a felony or crime of violence was premised upon his having committed felony murder, that conviction must also be reversed. . . ." [Citations omitted.] [Footnote omitted.]

*Wright, supra,* involved the prior action of a judge causing inconsistent verdicts in a jury trial. The unusual Court of Special Appeals' case of *Curtis Williams, supra,* involved subsequent actions by the Court of Special Appeals that resulted in the creation of an inconsistency in respect to a prior jury verdict.

In *Curtis Williams,* the Court of Special Appeals reconsidered a prior opinion it had filed. Williams argued that the court's vacating of one count in its prior opinion, had resulted in inconsistent verdicts in his case and that the inconsistency was not the result of a jury's actions, but one created by the Court of Special Appeals. The appellant in respect to the reconsideration stated: "[T]hat his conviction for using a handgun in the commission of a felony must be vacated because his conviction for the underlying felony was vacated." *Curtis Williams,* 117 Md.App. at 69, 699 A.2d at 480. The Court of Special Appeals responded as follows:

"We agree. In resolving this issue, we shall address an issue we have not heretofore fully explained.

"We initially note that this case was tried by a jury, and the jury's verdicts were completely consistent. It convicted appellant of both the underlying felony and the handgun offense. . . .

"Had the jury in the case at bar acquitted appellant of the underlying felony but convicted him of the handgun offense, its verdicts would have been inconsistent. We, however, would have been required to affirm the handgun conviction. . . . It is important to note that *Ford* involved jury verdicts. There are later cases in which courts have held that other types of inconsistent verdicts are impermissible.

"In *Garland v. State*, 29 Md.App. 27, 28, 349 A.2d 374 (1975), *rev'd*, 278 Md. 212, 362 A.2d 638 (1976) . . . the defendant was convicted by a jury of second degree murder and unlawful use of a handgun. We ultimately reversed the conviction for second degree murder. As to the handgun conviction, we stated:

'It follows that with the reversal of the conviction for the underlying felony, the conviction for the handgun violation, predicated of necessity upon it, must also be reversed.'

*Id.* at 32, 349 A.2d 374. That statement is technically correct. *Garland*, however, did not involve a jury inconsistency. It was, as is also clear in the case *sub judice*, an inconsistency created by an appellate court's vacating of the underlying felony." *Id.* at 69–70, 699 A.2d at 480–81(footnote omitted).

After a discussion of this Court's *Shell* holding, the Court of Special Appeals ultimately held in *Curtis Williams*:

"As we view this area of the law, inconsistent verdicts from juries are tolerated because of the unique role of juries in our judicial system. Inconsistent verdicts, however, are not generally tolerated in a non-jury context.

"The trial below resulted in jury verdicts that were completely consistent. With our action in the case *sub judice*, vacating the underlying felony, we, not the jury, have created the inconsistency. With no jury aura present,

there is no reason for us to tolerate any inconsistency in the verdicts. Accordingly, we shall also vacate appellant's conviction on the handgun charge. . . ."

*Id.* at 70–71, 699 A.2d at 481.

As in *Curtis Williams,* the jury's verdicts in the instant case were consistent. The jury acquitted Galloway of all counts presented to it. It was only subsequently, after the jury was excused, when the trial court found him guilty of two counts in the same case, that the verdicts in the case became inconsistent. The inconsistency, therefore, was created by the trial court. This is not one of those situations where significantly different evidence is considered by the trial court and thus, the inconsistency can be explained, and the general rule might not apply. In this case both verdicts depended upon identical evidence as to the material evidentiary issue. Accordingly, the trial court created improper inconsistent verdicts and its verdicts as to counts 8 and 9 shall be reversed.

## Conclusion

The trial court should have honored the jury's verdict and not rendered inconsistent verdicts. Upon receiving the jury's verdicts, the trial judge should have dismissed counts 8 and 9.

Article 21 of the Maryland Declaration of Rights, in relevant part, explicitly provides:

"That in all criminal prosecutions, everyman hath a right . . . to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."

In a criminal case a judge's role as it impacts on a jury's interpretation of the facts is normally limited to determining whether the facts support a jury's conclusions as to a conviction, not, as, what in essence occurred in the case at bar, whether the facts support a jury's conclusion as to an acquittal. If this Court were to approve the inconsistent verdicts rendered by the trial judge, it would be authorizing a practice that would permit the State to achieve a judgement of conviction that overrides a jury's finding of acquittal.

Moreover to accept what occurred here would be to create different, harsher, standards in criminal cases than in civil cases. We are unwilling to afford less protection to the jury trial rights of a criminal defendant, whose very liberty, or even his or her life, is at stake, than to a civil litigant, where, generally, it is money that is at stake.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

Concurring opinion by WILNER, Judge.

I concur in the judgment. The Court is correct in holding that, on the record in this case, once the jury returned verdicts of not guilty on Counts 5, 6, and 7, it was impermissible for the judge to find appellant guilty on Counts 8 and 9.

I write separately only to suggest that (1) the joinder of a criminal in possession of a firearm (CIP) charge with other charges that include, as an element, the possession of a weapon, necessarily raises the prospect of either undue prejudice to the defendant or of inconsistent verdicts, regardless of the procedure used to deal with the joinder, and (2) although the common law rule against inconsistent verdicts, except when rendered by the same jury at the same time, suffices to resolve this case, it is not the best approach. Also applicable, and, to me, preferable, is collateral estoppel—both the common law doctrine and its incorporation into the prohibition against double jeopardy.

It is becoming increasingly common to include a CIP count in an indictment that contains, or is to be joined with another indictment containing, other charges requiring proof of the defendant's possession of a weapon, and that presents a dilemma for both the prosecution and the defense, especially under the Maryland CIP statute. Article 27, § 445(d) makes it a felony, subject to a mandatory sentence of five years imprisonment, not subject to suspension or parole, for a person to be in possession of a regulated firearm if the person (1) has been convicted of a felony, a crime of violence, or a

misdemeanor carrying more than a two year sentence, (2) is a fugitive from justice, a habitual drunkard, or a habitual user of a controlled dangerous substance, (3) is suffering from a mental disorder and either has a history of violence or has been confined for more than 30 consecutive days in a mental institution, (4) is currently subject to a non-*ex parte* civil protection order, or (5) is less than 30 and was, in the past, adjudicated delinquent as a juvenile for committing a felony, crime of violence, or misdemeanor carrying a sentence of more than two years.

Ordinarily, those various elements of the CIP law relating to the defendant's criminal or juvenile record, mental health status, addiction to alcohol or controlled dangerous substances, or history of violence would not be admissible with respect to any other offense, and, except in the rare circumstance, the defense would most likely not want that kind of evidence presented to the jury while it is considering the other offenses. The State, on the other hand, does not want to have to try the case twice—once to prove that the defendant committed the current offense embodying possession of a weapon and again to prove that element of the CIP offense. If the jury convicts on the other offenses embodying possession of a firearm, the only additional evidence needed to establish the CIP count is the defendant's previous record or status. If, as is most often the case, the State is relying on a previous conviction, juvenile adjudication, or existing civil protection order, in the absence of some real dispute about the matter, that fact may ordinarily be supplied either by stipulation or by certified documents. If the State is relying on the defendant's mental health status or addiction to alcohol or drugs, especially when coupled with a history of violence, that issue could well become a major one in the trial and, because of its clear potential for undue prejudice, almost require some form of separation.

Several different approaches have been tried in order to resolve the problem. The one least favorable to the defendant is to have the jury consider all of the charges together, including the CIP charge, which would either allow evidence of

the defendant's unsavory record or status to be presented, with a limiting instruction with respect to that evidence or, as is often the case, a stipulation as to the defendant's status coupled with a limiting instruction. That approach, of course, does not raise the issue presented here, because inconsistent verdicts rendered by the same jury at the same time are accepted, but, as noted, it may well be inadequate to address the problem of undue prejudice, especially if the CIP charge rests on a serious or violent prior offense or a history of violence.

Because of the potential for prejudice, on motion or by agreement, the court may sever the CIP count for later trial, which could be before a different jury or, if the defendant waives a jury, before a judge. To avoid separate trials, which could require the empaneling of a new jury and a repetition of much of the evidence presented to the first jury, the court may take the intermediate step, as was done in *United States v. Joshua,* 976 F.2d 844 (3d Cir.1992), of bifurcating the CIP charge—allowing the jury to consider only the current substantive charges first, and then, after it renders a verdict on those charges, having that same jury hear the additional evidence and then consider the CIP charge. Presumably, the bifurcated CIP charge could later be heard by the judge, provided the defendant agrees to waive his right to have the jury consider it. As the *Joshua* court pointed out, not everyone agrees that the bifurcation approach is a good one, even where the jury ends up hearing all of the charges. The approach taken here, of essentially separate, but contemporaneous, trials—one before the jury, one before the judge-is simply another option.

The Federal courts have approved several of these approaches (although never the one used here). Some have found no error in the District Court's refusal to sever the CIP count and its allowance of either evidence of or a stipulation to the defendant's prior conviction. *See United States v. Bowie,* 142 F.3d 1301 (D.C.Cir.1998) (stipulation); *United States v. Ward,* 1996 WL 143470, 1996 U.S.App. LEXIS 10098 (6th Cir.1996) (unreported) (evidence presented); *United States v.*

*Stokes,* 211 F.3d 1039 (7th Cir.2000) (stipulation); *United States v. Rogers,* 150 F.3d 851 (8th Cir.1998) (stipulation); *United States v. Wacker,* 72 F.3d 1453 (10th Cir.1995) (stipulation). Others have approved of the bifurcation procedure. *See United States v. DeMasi,* 40 F.3d 1306 (1st Cir.1994) (apparent bifurcation); *United States v. Joshua, supra,* 976 F.2d 844 (bifurcation); *United States v. Yazzie,* 1998 WL 75707, No. 97–10068, 1998 U.S.App. LEXIS 3054 (9th Cir. Feb. 23, 1998) (unreported) (bifurcation); *United States v. Nguyen,* 88 F.3d 812 (9th Cir.1996) (preference for bifurcation or severance); *United States v. Brown,* 1995 WL 236718, 1995 U.S. Dist. LEXIS 5334 (S.D.N.Y. April 24, 1995) (stipulation or bifurcation); *United States v. Bodie,* 990 F.Supp. 1419 (S.D.Fla.1997) (bifurcation). At least two courts have required a severance. *See United States v. Singh,* 261 F.3d 530 (5th Cir.2001); *United States v. Gunn,* 968 F.Supp. 1089 (E.D.Va.1997).

These various approaches all have pluses and minuses from the point of view of good judicial administration. Absent some agreement that would allow the trier of fact as to the CIP count to rely on the evidence produced at the trial of the other counts, severance or bifurcation may require two, largely duplicative, trials. It also raises the prospect either of inconsistent verdicts or a collateral estoppel/double jeopardy bar. If the first jury convicts on a possession count and the second jury (or judge) acquits on the CIP count, even on uncontested evidence of the defendant's requisite status, the law would require that the inconsistent verdicts be accepted; the acquittal on the CIP count could not be ignored.

If the jury were to acquit on the possession charge and there is no independent evidence of possession, the issue of inconsistent verdicts would probably not even arise; the question in that circumstance would be whether, on collateral estoppel/double jeopardy principles, a second trial could even take place.[1] The procedure used here, of a simultaneous trial,

---

1. There are circumstances in which a second trial on the CIP charge and a guilty verdict on that charge would be permissible. As here, the

raises the same prospects, of the jury convicting and the judge acquitting or of the jury acquitting and the issue being raised of what the judge may then do. That issue, it seems to me, is better resolved by holding that, on collateral estoppel/double jeopardy principles, the judge may not proceed but must dismiss the CIP count, rather than allowing the judge to proceed with a trial, knowing that his or her only option is to acquit, regardless of how the judge actually views the evidence.

The point is that the problem we address here can arise whenever, by any procedure, the jury does not resolve the CIP charge together with and at the same time as the other possession offense, and, when that occurs and the jury acquits, the problem is really one of collateral estoppel/double jeopardy. If the issue is approached that way, the procedure used here or a bifurcated trial approach has much to commend it; it saves time and judicial resources without any prejudice to the defendant. Had the jury in this case convicted on Counts 5, 6, and 7, there would be no impediment to the judge convicting on Counts 8 and 9. If, as occurred, the jury acquitted, that would end the matter, even if there had been a severance or *Joshua* type of bifurcation.

Because I would approach the issue as one of collateral estoppel/double jeopardy, I do not agree with Judge Harrell that appellant waived his right to insist that Counts 8 and 9 be dismissed. The question is not whether the defendant waived his right to a jury trial on Counts 8 and 9; clearly, he did.

---

substantive charge may be an aggravated assault with a handgun, and the evidence regarding the defendant's commission of that crime may be in sharp dispute. There might also be evidence, however, that, in its investigation of the assault, the police searched the defendant at a later time and place and found him in possession of a gun. Acquittal on the assault charge could well be based on the jury's doubt that the defendant committed the assault and would therefore not necessarily require acquittal on the CIP charge, which could rest on the later possession. In this case, there was no such independent evidence. The only evidence connecting appellant to a regulated firearm was that pertaining to the shooting.

The issue is whether he waived his right against double jeopardy.

Although collateral estoppel/double jeopardy may, in some instances, be waived, where the choice is either to allow otherwise inadmissible and prejudicial evidence to be admitted or to insist on a bifurcation, severance, or procedure such as that employed here, I do not believe that the bar of waiver is appropriate. By insisting on a procedure that would preclude the prejudicial evidence from being admitted, the defendant does not waive his/her right to a dismissal of the CIP count(s) in the event of an acquittal on a possession charge. It would be wholly impermissible to make a defendant choose between one right (to preclude the admission of unduly prejudicial evidence) and another (double jeopardy).

Dissent by HARRELL, J., joined by RAKER and BATTAGLIA, JJ.

I am unable to accept, on the record of this case, the reasoning embodied in the Majority opinion or its result. The Majority condemns the procedure utilized in Appellant's trial, yet that procedure was put in place largely at Appellant's request and with his acquiescence. Appellant should have foreseen, in urging the trial judge to structure the trial and return of verdicts as was done, the real possibility of the disparate outcomes. Moreover, the Majority's concern for an impingement on Appellant's right to a jury trial gives little real weight to the fact that he knowingly and voluntarily waived his right to a jury trial as to the counts for which the court convicted him. For the reasons that follow, I would affirm the judgment of the Circuit Court for Baltimore City.

I.

The Majority rejects the proposition that the trial judge had the discretion to grant the admittedly non-traditional simultaneous-trial procedure used in the instant case. The Majority opinion severely and unduly undercuts the well-established principle that the decision to join or sever charges ordinarily

lies within the sound discretion of the trial court, *See Frazier v. State,* 318 Md., 597, 607, 569 A.2d 684, 689 (1990); *Grandison v. State,* 305 Md. 685, 705, 506 A.2d 580, 589 (1986); *But see McKnight v. State,* 280 Md. 604, 612, 375 A.2d 551, 556 (1977) (mandating severance where a defendant charged with similar but unrelated offenses establishes that "the evidence as to each individual offense would not be mutually admissible at separate trials").

In the present case, the trial judge was aware of the potential for spill-over prejudice on counts 1 through 7 from the admission of Appellant's prior criminal record on the criminal-in-possession charges (counts 8 and 9). This concern was particularly acute here due to the similar nature of the crimes charged in the indictment with the predicate prior offense underlying count 8, i.e., battery. The simultaneous-trial proceeding erected, in essence, an "informational wall" between the judge and jury on the argument and prejudicial evidence presented on the criminal-in-possession charges. This procedure effectively precluded any possibility that the jury's verdict on counts 1 through 7 could be tainted by the necessary admission of Appellant's prior criminal record as to counts 8 and 9, while still allowing the State the opportunity to present its entire case without the duplicative presentation of evidence that would occur as a result of conducting consecutive trials.

As acknowledged by the Majority (Maj. op. at 394–95), Maryland Rule 4–253(c) expressly vests in a trial judge the discretion to sever counts in a multi-count indictment to avoid prejudicial joinder. The trial procedure utilized here was commensurate with the court's power to sever and within its authority to "grant any other relief as justice requires." Assuming a defendant properly waives his or her right to a jury trial on the counts adjudicated by the court, *see* Md. Rule 4–246(b),[1] I would hold that implementation of the simultaneous-trial procedure, although not traditional, strikes an ap-

---

1. Maryland Rule 4–246(b) details the procedure for accepting a criminal defendant's waiver of his right to a trial by jury in a circuit court.

propriate balance between the twin concerns of prejudicial joinder and judicial economy, and is within the sound discretion of the trial court to grant. In explaining my reasoning, I shall address both of Galloway's questions as raised in his brief.

## II.

It is well settled that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution [2] "prohibits successive prosecutions as well as cumulative punishment" for the same offense. *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977). *See Farrell v. State,* 364 Md. 499, 504, 774 A.2d 387, 390 (2001). This constitutional guarantee is applicable to this State through the Fourteenth Amendment, *see Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969), and is rooted in Maryland common law.[3] Maryland's courts often draw on the cases of the Supreme Court for guidance in developing our double jeopardy jurisprudence and, for this reason, our common law is generally harmonious with constitutional interpretations of the federal provision.[4]

The double jeopardy prohibition provides a criminal defendant three basic protections. It protects against: (1) a second prosecution for the same offense after acquittal (common law plea of *autrefois acquit* ); (2) a second prosecution for the

---

**2.** The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

**3.** While there is "no express double jeopardy provision [in the Maryland Constitution], there is protection against it under Maryland common law." *See Ware v. State,* 360 Md. 650, 708, 759 A.2d 764, 795 (2000); *Bell v. State,* 286 Md. 193, 201, 406 A.2d 909, 913 (1979) (discussing common law protection against double jeopardy).

**4.** Appropriately describing this complex area of law, however, the Supreme Court has said "the decisional law in the [double jeopardy] area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States,* 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981).

same offense after conviction (common law plea of *autrefois convict*); and (3) multiple punishments for the same offense. *See State v. Griffiths*, 338 Md. 485, 494, 659 A.2d 876, 881 (1995) (quoting *Brown*, 432 U.S. at 165, 97 S.Ct. at 2225, 53 L.Ed.2d 187 (citation omitted)); *Huff v. State*, 325 Md. 55, 74, 599 A.2d 428, 437 (1991) (citing *Gianiny v. State*, 320 Md. 337, 347, 577 A.2d 795, 799–800 (1990)).

Indispensable to a proper understanding of double jeopardy law is an appreciation of the policy considerations that mandate its enforcement. It has been stated on many occasions that the double jeopardy prohibition is premised on "the belief that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting [a defendant] to embarrassment, expense, and ordeal and compelling him [or her] to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent [a defendant] may still be found guilty.' " *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) (quoting *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). The same sentiment was expressed by this Court in *Mason v. State*, 302 Md. 434, 438, 488 A.2d 955, 957 (1985) (quoting *Parks v. State*, 287 Md. 11, 14, 410 A.2d 597, 600 (1980) (discussing the rationale associated with double jeopardy)). Discussing the policy considerations supporting the Double Jeopardy Clause, the Supreme Court in *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), explained:

[The] Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This prohibition, lying at the core of the Clause's protections, prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance.

*Tibbs,* 457 U.S. at 41–42, 102 S.Ct. at 2218, 72 L.Ed.2d 652 (internal quotations omitted) (citations omitted). *See Winder v. State,* 362 Md. 275, 325, 765 A.2d 97, 124 (2001). To this end, the Double Jeopardy Clause "guards against Government oppression." *United States v. Scott,* 437 U.S. 82, 99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978).

Relying on this Court's decision in *Wright v. State,* 307 Md. 552, 515 A.2d 1157 (1986), Appellant's first contention is that the finality of the jury acquittal on the charge of carrying a handgun (count 7) precluded further proceedings by the trial court on the "same offense" of possessing a firearm (counts 8 and 9). Raising the shield of *autrefois acquit,* Appellant argues that the trial court's decision ignored the one absolute rule of double jeopardy analysis: "[t]here [are] no exception[s] permitting retrial once the defendant has been acquitted, no matter how egregiously erroneous." (Quoting *Sanabria v. United States,* 437 U.S. 54, 75, 98 S.Ct. 2170, 2184, 57 L.Ed.2d 43 (1978) (citation omitted)).

The State, of course, does not take issue with the basic principles of finality discussed and applied in *Wright.* It concedes that "the status accorded to an acquittal on criminal charges is a fundamental one and quite unforgiving of mistakes, errors, or irregularities." Nevertheless, the State contends the doctrine of *autrefois acquit* does not apply here because the simultaneous court and jury trial procedure was the result of Appellant's deliberate choice. Consequently, the State argues, the policy considerations supporting a double jeopardy claim—to prevent government oppression—are not implicated here. I agree. Appellant's instrumental role in fashioning the trial process, and the absence of the type of "evils" the Double Jeopardy Clause is designed to prevent, removed any constitutional or common law barrier under double jeopardy principles to the trial court's decision in this regard.

The State relies on two closely analogous double jeopardy cases in support of its contention. *See Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), and

*Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). The facts in *Jeffers* may be summarized briefly. Jeffers was charged in two separate indictments with conspiracy to distribute narcotics and conducting a continuing-criminal-enterprise to violate the drug laws. Shortly after the indictments were returned, the Government filed a motion to consolidate the charges. Jeffers successfully opposed the Government's motion, and thereafter was tried and convicted on the conspiracy charge. Jeffers then moved to dismiss the remaining charge on "double jeopardy" grounds, claiming that he had already been placed in jeopardy for the "same offense," in that the conspiracy charge was a lesser included offense of the continuing-criminal-enterprise charge. Jeffers's motion was denied and he was subsequently tried and convicted on the second charge as well.

In a plurality opinion, the *Jeffers* Court found the case to be an exception to the general rule that the Double Jeopardy Clause prohibits a State or the federal government "from trying a defendant for a greater offense after it has convicted him of lesser included offense," which general rule had been announced that same day in *Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). *Jeffers,* 432 U.S. at 150, 97 S.Ct. at 2216, 53 L.Ed.2d 168. Finding Jeffers "solely responsible" for the successive prosecutions on the conspiracy charge and the continuing-criminal-enterprise charge, the Court held that his action "deprived him of any right that he might have had against consecutive trials."

Similarly, in *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), the Court concluded that *Brown's* rule against successive prosecutions for greater and lesser included offenses did not apply where a defendant has entered, over the State's objection, guilty pleas to lesser included offenses while charges of greater offenses remained pending under a multi-count indictment brought in a single prosecution. Calling this an even clearer case than *Jeffers,* the Court underscored the absence of "governmental overreaching" in a single prosecution, observing that this was not a case where the State had "the opportunity to marshal its evidence and re-

sources more than once or to hone its presentation of its case through a trial." *Johnson,* 467 U.S. at 501, 104 S.Ct. at 2542, 81 L.Ed.2d 425. The Court concluded that under the circumstances, the defendant "should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." *Johnson,* 467 U.S. at 502, 104 S.Ct. at 2542, 81 L.Ed.2d 425.

## III.

In the present case, Appellant was indicted on nine related charges in a single indictment stemming from the same incident. At the time Appellant filed his motion for severance of counts 8 and 9, there was nothing to prevent the State from prosecuting Appellant for multiple offenses, including lesser included offenses, in one trial proceeding. *See Johnson,* 467 U.S. at 501, 104 S.Ct. at 2541–42, 81 L.Ed.2d 425; *Jeffers,* 432 U.S. at 153, 97 S.Ct. at 2217–18, 53 L.Ed.2d 168; *Frazier,* 318 Md. at 607, 569 A.2d at 689. Moreover, it appears that Appellant may have been entitled to a limiting jury instruction, minimizing the prejudicial effect of his prior convictions. Appellant, however, deliberately chose not to pursue this course of action, but rather opted to pursue the separate, but simultaneous, court and jury trials that ensued.

Responding to the State's objection to severance and suggestion that Appellant instead request a limiting jury instruction, Appellant's counsel replied:

[Galloway] advises he'd be willing to waive his right to a jury trial on Counts 8 and 9.

In response, the State asked the court's permission to confer with Appellant's counsel, after which the State said:

Your Honor, if the—if counsel and the defendant are willing to waive their right to a jury trial on the last two counts and proceed before the [c]ourt on those, the State will not object to severing those two counts from the indictment.

Thereupon, Appellant's counsel qualified Appellant on his knowing partial waiver of his right to a jury trial and the manner in which the trial would proceed:

[Galloway's counsel:] Mr. Galloway, you understand that we are going to have a jury trial in the first seven counts of your case? It's going to be 12 people selected at random.... Those 12 people will hear your case, and all 12 of them ... must agree that the State has proven its case beyond a reasonable doubt before you can be convicted. Do you understand that?

[Galloway]: Yes.

[Galloway's counsel:] We are going to have a jury trial with respect to Counts 1 through 7. Counts 8 and 9, however, it's my understanding you're willing to give up your right to a jury trial and let [the trial judge] decide your guilt or innocence. Again, [the trial judge] would have to be convinced beyond a reasonable doubt before you could be convicted of those two counts, *but it would be just her making that decision and not 12 citizens.* Are you willing to give up your right to a jury trial as to those last two counts?

[Galloway:] Yes.

(Emphasis added). Shortly thereafter, and before the jury was sworn, the State proffered in greater detail the manner in which it anticipated the trial would proceed, and Appellant concurred with that recitation. *See* Maj. op. at 389–90, n. 9.

I think it clear that the principles enunciated in *Jeffers* and *Johnson* are applicable on the record before us. Appellant's deliberate and calculated election to sever counts 8 and 9 from the indictment and to engage in the simultaneous court and jury trial proceeding were clearly trial tactics. In a hearing on Appellant's motion for a new trial on 27 June 2001, Appellant's counsel discussed his motivation in making the request. Asked by the court to distinguish the case at bar from the Supreme Court's decision in *Johnson*, Appellant's counsel responded:

[In *Johnson*] ... I think there was a great degree of finagling by Defense counsel to get the plea to the lesser included offense heard first in order to set the case up to

make it [a] double jeopardy standard. Now I will admit to a certain amount of finagling on my own part in this case. I did move to sever the charges. I asked the [c]ourt to hear and decide the counts eight and nine, but the reason for that Your Honor, was not so that I could raise the shield of double jeopardy at a later date. The reason for that was that I did not want the jury to hear that my client had a misdemeanor conviction.

After further discussion, Appellant's counsel reiterated his prior remarks:

Now as far as Defense finagling or anything of that nature, the only purpose of that was to keep the evidence, the misdemeanor convictions away from the jury. Now Your Honor, I'm well aware of the case that [the State] cites that it would not have been an abuse of this [c]ourt's discretion to require all the charges to have gone to the jury and denied the motion to sever. Frasier [sic] says it was within the [c]ourt's discretion to sever and the [c]ourt did sever so I think we're past that.

Appellant engaged in similar tactics in urging the court to defer its verdict until after the jury had rendered its verdict. During Appellant's argument on his motion for a new trial, the court questioned the "fortuity" of the sequence in which the verdicts were rendered. Noting that it had deferred its verdict at Appellant's request,[5] the court questioned whether the jury would have been bound by the court's factual finding had the court disregarded Appellant's request and rendered its verdict first. Avoiding a direct response, Appellant's coun-

---

**5.** In a footnote in the trial court's memorandum, dated 27 July 2001, denying Appellant's motion for a new trial, the trial judge explained the reason for delaying her verdict:

The court readily acquiesced to the defendant's request that the jury's verdict be taken before the court's to avoid any possibility that the jury would learn of, and be influenced by, the court's verdict. If defense counsel believed at the time of his request that double jeopardy or collateral estoppel precluded the second fact-[finder] to announce its decision from being inconsistent with the first fact-finder to announce its decision, he did not share that view with the court any time before the filing of the motion for a new trial.

sel explained that "[his] strategy in this case" was that "the [c]ourt would follow the jury's verdict."

While it is entirely within the Appellant's right to attempt to influence the trial process in a manner that best serves his interests, nonetheless, Appellant cannot reap the intended benefits of his efforts,[6] but avoid their attendant burdens and foreseeable consequences. Appellant was entitled to have all of the charges against him resolved in one proceeding. Assuming, *arguendo*, that the criminal-in-possession counts were the "same offense" as any of the first seven counts of the indictment,[7] like the defendant in *Jeffers*, it was Appellant's own action that resulted in the functional equivalent of two separate trials.[8] Moreover, Appellant had a complete appreci-

---

**6.** In his reply brief, Appellant seems to dispute the chain of events that led to the trial procedure utilized in the instant case. Arguing the State "[r]e-work[ed] the procedural history" to support its argument that Appellant was responsible for the manner in which the trial was conducted, Appellant claims that while he moved for severance of the charges, he anticipated "completely separate judge and jury trials." Appellant contends he merely acquiesced to the prosecutor's proposal for the simultaneous court and jury trial procedure, as the prosecutor "conditioned his consent [for severance on counts 8 and 9] on the two trials proceeding simultaneously." I believe the record supports the State's contention that Appellant prompted, and fully participated in, the decision to conduct the trial in the manner in which it was conducted.

**7.** Appellant contends that under this Court's analysis in *Frazier*, "carrying a handgun [ (count 7) ] and possession of a handgun by a person with a prior conviction [ (counts 8 and 9) ] should be deemed the 'same offense' in accord with the 'same evidence' test established in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)." For the reasons discussed above, I would not, and shall not, address this matter here.

**8.** I do not exalt form over substance in my determination that the trial procedure employed in this case involved two separate, though simultaneous, trials before two independent fact-finders. It is clear from the record that the court severed counts 8 and 9 from the single indictment. Appellant originally moved for severance of the charges in his pretrial motions. During the course of the motions hearing, and after conferring with Appellant's counsel, the State advised the court that it would "not object to severing" counts 8 and 9 from the indictment if the defendant was willing to waive his right to a jury trial on the same counts, which Appellant subsequently waived. *See supra* pages 428–29.

·ation for the manner in which the trial was to be conducted, first by his counsel's description to him during the jury trial waiver colloquy, and later in the State's detailed explanation of the anticipated procedure. This procedure necessarily contemplated the possibility that two independent fact-finders might reach conflicting verdicts. Legal consequences flow from such tactical decisions. When a defendant voluntarily elects to proceed in a particular course of action, he or she must accept the foreseeable consequences of those elections.

Of equal import in my consideration of this matter is the absence of State oppression which the double jeopardy prohibition is intended to prevent. Double jeopardy principles ordinarily are implicated in a sequential setting. Here, the court and jury trials were heard simultaneously, not successively, with evidence of the defendant's prior convictions heard by the court alone. The State did not institute an entirely new prosecution for the same offense following an acquittal or conviction of Appellant. Accordingly, none of the "hazards of trial, embarrassment and anxiety" attendant in successive prosecutions are present. *Parks*, 287 Md. at 14, 410 A.2d at 600. In this regard, this case more closely resembles the single prosecution of *Johnson* than the successive prosecutions found in *Jeffers*. This is not the example of an all-powerful State determined to convict a defendant through "sheer governmental perseverance." *See supra* pages 427–428. As did the Court in *Johnson*, I find "there simply has been none of the governmental overreaching that double jeopardy is supposed to prevent." *Johnson*, 467 U.S. at 502, 104 S.Ct. at 2542.[9]

---

Moreover, the court noted in its 27 July 2001 memorandum that it had "severed" the two counts at defendant's request, and that the "court and jury *trials* were heard simultaneously." (Emphasis added).

**9.** Appellant contends that this case can be distinguished from *Jeffers* and *Johnson* based on the fact that those cases involved prior convictions in the first prosecution, as opposed to the acquittal which occurred in the instant case. Appellant disregards, however, the extraordinary trial procedure that was employed in this case. The State did not pursue a course of seriatim prosecutions; rather it was separate,

The foregoing analysis is consistent also with prior decisions that have refused to apply a double jeopardy bar to a subsequent prosecution where initial jeopardy terminated for reasons other than evidentiary insufficiency. Thus, for example, retrial following a defendant's successful appeal of a conviction for trial error is not barred under double jeopardy principles. *See United States v. Tateo*, 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964); *United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896) ("[A] defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence of which he had been convicted.") (citations omitted). *But see Burks*, 437 U.S. at 11, 98 S.Ct. at 2147, 57 L.Ed.2d 1 (announcing the narrow exception barring retrial when a verdict is set aside for insufficiency of the evidence). While this well-established rule has been justified under various legal theories,[10] it most commonly is premised on the following three

---

but simultaneous, trials that simply required one verdict to be announced before the other. Indeed, Appellant directly was responsible for the order in which the verdicts were rendered. *See supra* note 5. Accordingly, the distinction Appellant urges is inapposite where, as here, the defendant is responsible for the simultaneous court and jury trials, as well as the order in which the verdicts are rendered by the independent fact-finders.

**10.** It has been stated on occasion that the general rule allowing retrial on a defendant's reversal of a conviction, first announced in *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), is grounded on a "waiver" theory, i.e., the defendant has waived his or her double jeopardy rights by successfully appealing his or her conviction. *See Trono v. United States*, 199 U.S. 521, 534, 26 S.Ct. 121, 124, 50 L.Ed. 292 (1905) (discussing the *Ball* doctrine, the Court explained that "by appealing, the accused waives the right to thereafter plead once in jeopardy"). The *Ball* doctrine has also been explained on the basis of a "continuing jeopardy" theory, a concept originally formulated by Justice Holmes in his dissent in *Kepner v. United States*, 195 U.S. 100, 134–37, 24 S.Ct. 797, 806–07, 49 L.Ed. 114 (1904) (Holmes, J., dissenting) (explaining the *Ball* principle on the basis that "[t]he jeopardy is one continuing jeopardy from its beginning to the end of cause"). *See Price v. Georgia*, 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970) (noting with approval the continuing jeopardy rationale for the *Ball* doctrine).

grounds: (1) a defendant's role in reversing the conviction, *see North Carolina v. Pearce*, 395 U.S. 711, 720–21, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969) (noting that this "well-established" rule rests on the "premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate

---

Neither of these explanations, however, have been embraced without reservation. *See, e.g., Green v. United States*, 355 U.S. 184, 191–92, 78 S.Ct. 221, 225–26, 2 L.Ed.2d 199 (1957) (rejecting the doctrine of "waiver" as it applies to the policy of allowing retrials to correct trial error); *United States v. Jenkins*, 420 U.S. 358, 369, 95 S.Ct. 1006, 1013, 43 L.Ed.2d 250 (1975) (noting that the concept of "continuing jeopardy" articulated by Justice Holmes in his dissent in *Kepner*, "has never been adopted by a majority of [the United States Supreme] Court"); *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964) (dismissing explanations for the *Ball* principle as "conceptual abstractions," the Court instead chose to focus on the implications of *Ball* "for the sound administration of justice").

In a related context, the Supreme Court in *United States v. Dinitz*, 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976), expressly rejected the waiver analysis as applied to a defendant's successful motion for a mistrial. In this regard, the Supreme Court explained that "traditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error." *Id.* In a subsequent footnote, the Supreme Court further explained that the traditional standard of waiver of a constitutional right—knowing, intelligent, and voluntary—established in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), did not apply to the rule permitting retrials following a defendant's voluntary mistrial or a reversal of a conviction on appeal. *See Dinitz*, 424 U.S. at 609 n. 11, 96 S.Ct. at 1080 n. 11, 47 L.Ed.2d 267 (citing *Breed v. Jones*, 421 U.S. 519, 534, 95 S.Ct. 1779, 1788, 44 L.Ed.2d 346 (1975); *United States v. Wilson*, 420 U.S. 332, 343–44 n. 11, 95 S.Ct. 1013, 1022 n. 11, 43 L.Ed.2d 232 (1975); *United States v. Jorn*, 400 U.S. 470, 484 n. 11, 91 S.Ct. 547, 557 n. 11, 27 L.Ed.2d 543 (1971) (plurality opinion); *Tateo*, 377 U.S. at 466, 84 S.Ct. at 1589, 12 L.Ed.2d 448).

The waiver theory, as it applied to a defendant's successful motion for a mid-trial dismissal on grounds unrelated to guilt or innocence, likewise was rejected by the Supreme Court in *United States v. Scott*, 437 U.S. 82, 98–99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978). While concluding that a defendant "suffers no injury cognizable under the Double Jeopardy Clause" under such circumstances, the Supreme Court explained, however, that

[w]e do not thereby adopt the doctrine of "waiver" of double jeopardy rejected in *Green* [, 355 U.S. at 193–94, 78 S.Ct. at 226, 2 L.Ed.2d 199]. Rather, we conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.

wiped clean"); *accord Harris v. State,* 312 Md. 225, 240, 539 A.2d 637, 644 (1988) (applying the "clean slate" rationale of *Pearce* ); *Parks,* 287 Md. at 19, 410 A.2d at 602 (explaining that "a defendant cannot by his own act avoid the jeopardy in which he stands and then assert it as a bar to a subsequent jeopardy."); (2) policy considerations, *see, e.g., Tibbs,* 457 U.S. at 40, 102 S.Ct. at 2217, 72 L.Ed.2d 652 (explaining that "retrial after reversal of a conviction is not the type of governmental oppression targeted by the Double Jeopardy Clause"); *accord Scott,* 437 U.S. at 91, 98 S.Ct. at 2194, 57 L.Ed.2d 65; and (3) on the basis of fairness in the administration of justice. *See United States v. Wilson,* 420 U.S. 332, 344, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975) (citing *Tateo,* 377 U.S. at 465–66, 84 S.Ct. at 1589, 12 L.Ed.2d 448, for the proposition that "the practical justification . . . is simply that it is fairer to both the defendant and the Government"); *accord Parks,* 287 Md. at 16, 410 A.2d at 601 ("Not only is the right of the defendant to an error-free trial protected but the societal interest that the guilty should be punished is preserved.").

For similar reasons, a defendant's voluntary request for a mistrial ordinarily will not bar re-prosecution under double jeopardy principles. *See, e.g., Scott,* 437 U.S. at 93, 98 S.Ct. at 2195, 57 L.Ed.2d 65 (characterizing a defendant's voluntary request for a mistrial as a "deliberate election on [a defendant's] part to forgo his valued right to have his guilt or innocence determined before the first trier of fact"); *Dinitz,* 424 U.S. at 609, 96 S.Ct. at 1080, 47 L.Ed.2d 267 ("The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of [judicial or prosecutorial] error."). *But see Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982) (recognizing the narrow exception that the Double Jeopardy Clause precludes retrial of a defendant whose mistrial request is granted when "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a

---

*Id.* (footnote omitted).

mistrial"). *See also Thanos v. State,* 330 Md. 576, 587–88, 625 A.2d 932, 937 (1993) ("Ordinarily, of course, when a defendant requests a mistrial, he waives his 'valued right to have his trial completed by a particular tribunal.' ") (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)); *Bell v. State,* 286 Md. 193, 202, 406 A.2d 909, 913 (1979). Likewise, re-prosecution is not barred when a defendant successfully moves for a mid-trial dismissal on grounds unrelated to guilt or innocence. *See, e.g., Scott,* 437 U.S. at 99, 98 S.Ct. at 2198, 57 L.Ed.2d 65 (concluding that "the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice."); *Lee v. United States,* 432 U.S. 23, 31, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977) (observing that the "proceedings were terminated at the defendant's request and with his consent," the Court ultimately held that defendant's successful dismissal did not offend double jeopardy principles).

The preceding cases are consistent with the rationale applied in *Jeffers* and *Johnson.*[11] Moreover, the circumstances presented in the case at hand fit squarely within this line of double jeopardy jurisprudence. It is clear that Appellant (and not the State) exercised the primary advocacy in achieving severance of the inherently prejudicial charges from the first seven counts and the simultaneous court and jury trials that followed. Likewise, Appellant solicited the order in which the verdicts were rendered. *See supra* note 5. Consequently, no

---

11. The Court's holding in *Jeffers,* on occasion, has been characterized in dictum on the basis that Jeffers had "waived" his double jeopardy claim. *See Rutledge v. United States,* 517 U.S. 292, 303, 116 S.Ct. 1241, 1248–49, 134 L.Ed.2d 419 (1996) (discussing the rationale underlying the *Jeffers* decision, the Court noted that "the four-Justice plurality decided that Jeffers had waived any right to object to Jeffers' prosecution for that conviction"); *Sanabria,* 437 U.S. 54, 76, 98 S.Ct. 2170, 2185, 57 L.Ed.2d 43 (1978); *Hunt v. State,* 95 Md.App. 471, 478–79, 622 A.2d 155, 159 (1993) (relying on *Jeffers* and Maryland common law to apply a waiver analysis to deny a defendant's double jeopardy claim). *But see United States v. Edmond,* 288 U.S.App.D.C. 17, 924 F.2d 261, 269 (D.C.Cir.1991) (declining to apply a waiver analysis, the court noted that the Supreme Court in *Johnson* and *Jeffers,* "neither employed a waiver analysis nor mentioned the term").

interests protected by double jeopardy principles were offended here. Furthermore, this reasoning is in accord with principles of fairness and the "sound administration of justice" embraced in *Tateo,* 377 U.S. at 465–66, 84 S.Ct. at 1589, 12 L.Ed.2d 448, and by this Court in *Parks,* 287 Md. at 16, 410 A.2d at 601. Just as the societal interest in punishing the guilty is preserved, so too is a defendant's right to secure a fair trial protected. Trial courts would be reluctant, at the very least, to grant a defendant's motion for severance on criminal-in-possession charges and to conduct simultaneous court and jury trials if to do so would give rise to double jeopardy implications. A decision that would allow for this possibility, in effect, would sound the death knell for a trial procedure that is manifestly in a defendant's interest.

Accordingly, I would find the principles of finality applied in *Wright* inapplicable where a defendant freely elects to have two counts of a multi-count indictment severed and tried to the court, and elects to have the remaining counts tried to a jury in a simultaneous-trial proceeding. I conclude therefore, under the circumstances presented here, that Appellant was not deprived of the benefit of double jeopardy protections under either the Double Jeopardy Clause of the Fifth and Fourteenth Amendments or, independently, under Maryland common law double jeopardy principles. Moreover, for the foregoing reasons, the doctrine of collateral estoppel embodied under the Fifth and Fourteenth Amendments and Maryland common law, does not apply in the instant case.

## IV.

I turn now to Appellant's other claims of trial error. Appellant's first contention is that the trial court's guilty verdicts on counts 8 and 9 are fatally flawed because they are impermissibly inconsistent with the jury's verdict of not guilty on all counts. Relying on *Johnson v. State,* 238 Md. 528, 209 A.2d 765 (1965), and related cases, Appellant contends that when the "source of the [inconsistent verdict] is the jury, the inconsistency is tolerable; when the source of the inconsistency is the judge, it is not." It follows, Appellant argues, that

"because the court created the inconsistency, its verdict must be vacated."

The State disputes the applicability of *Johnson* and related cases in the case *sub judice,* in light of the fact that "the [trial court's] two [guilty] verdicts were consistent with each other and were in no way governed by the outcome of the jury's verdicts." I agree. The general rules governing inconsistent verdicts in a criminal trial do not apply to inconsistencies between the verdicts of separate fact-finders rendered in separate, albeit simultaneous, court and jury trials *conducted at a defendant's request.*

The rules governing inconsistent verdicts rendered by a trial judge in a non-jury trial were discussed by this Court in *State v. Anderson,* 320 Md. 17, 575 A.2d 1227 (1990):

It is ... settled in this State, as a nonconstitutional common law principle, that inconsistent verdicts of guilty and not guilty, by a trial judge at a nonjury trial, are not ordinarily permitted. The remedy is to reverse or vacate the judgment entered on the inconsistent guilty verdict. Where, however, there is apparent inconsistency in the verdicts at a nonjury trial, but where the trial judge on the record satisfactorily explains the apparent inconsistency, the guilty verdict may stand. If there is only an apparent inconsistency which in substance disappears upon review of the trial court's explanation, the guilty verdict will not be vacated.

*Anderson,* 320 Md. at 29–30, 575 A.2d at 1233 (footnote omitted) (internal quotations omitted) (citations omitted).[12] *See also Shell v. State,* 307 Md. 46, 58, 512 A.2d 358, 364 (1986) (reversing the judgment on an inconsistent guilty verdict in a nonjury trial); *Johnson,* 238 Md. at 543, 209 A.2d at 772

---

**12.** Inconsistent verdicts in a jury trial, however, are tolerated. *See Shell v. State,* 307 Md. 46, 54, 512 A.2d 358, 362 (1986) ("The general view is that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and that continual correction of such matters would undermine the historic role of the jury as the arbiter of questions put to it.")

(" '[W]e reverse for inconsistency ... because we can have no confidence in a judgment convicting [the defendant] of one crime when the judge, by his acquittal of another, appears to have rejected the only evidence that would support the conviction here.' ") (quoting with approval *United States v. Maybury*, 274 F.2d 899, 905 (2nd Cir.1960)).

As the State correctly points out, the critical—and obvious—distinction between the cases Appellant and the Majority cite and the case now before us is the absence of an internal inconsistency in the trial court's verdict. This is not a case that demands reversal because we have no "confidence" in the trial court's judgment. Indeed, the court articulated the reasons for its verdict. Finding that Appellant had been convicted previously of the predicate offenses underlying counts 8 and 9, the court explained that the remaining "evidentiary issue is whether [Appellant] possessed a firearm on September 1, 1997." The court found the testimony of the State's chief witness, Robert Knox, to be credible. The court further noted that Mr. Knox's testimony was corroborated by Appellant's own witness, his mother, to the extent that "she heard shots that night and approximately ten to 12 seconds later she looked out her window and the [Appellant] was standing on the steps of her home." Accordingly, the court found that Appellant "was in possession of [a] gun for purposes of Article 27 Section 445D [sic]," and entered a conviction on those counts. Clearly, the trial court is free to credit the testimony of the witnesses. *See State v. Stanley*, 351 Md. 733, 750, 720 A.2d 323, 331 (1998) ("Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder."). *See also* Md. Rule 8–131(c) (stating that "[w]hen an action has been tried without a jury, the appellate court ... will give due regard to the opportunity of the trial court to judge the credence of the witnesses.").

Appellant does not provide, nor was I able to find, authority for the proposition that the trial court in the trial of a criminal matter is bound by a jury's verdict in separate, but simulta-

neous, trial proceedings held at a defendant's request.[13]  *See*

13. Though not raised in Appellant's brief, Appellant's counsel seized upon a comment made in passing by a member of the Majority at oral argument concerning the authority of the trial court to render a verdict inconsistent with the jury's resolution of common factual issues. *See* Maj. op. at 400–16. In this regard, an analogy was drawn between the simultaneous court and jury trials presented in the instant case, and the circumstances presented in a civil context where, due to the presence of both equitable and legal issues, a trial is conducted both to the jury and to the court in a single proceeding. As noted earlier, this has become the Majority's raison d'etat. While it is true in the latter circumstance that a judge cannot award equitable relief inconsistent with a jury's verdict, *see Edwards v. Gramling Eng'g Corp.,* 322 Md. 535, 543, 588 A.2d 793, 797 (1991) (citing with approval federal case law); *Higgins v. Barnes,* 310 Md. 532, 541–42, 530 A.2d 724, 728 (1987), these cases, and those discussed in the Majority opinion, are not controlling in a criminal context where a defendant has waived his right to a jury trial.

   Since the 1984 merger of law and equity procedure in Maryland, parties may join legal and equitable claims in a single civil action. *See* Md. Rule 2–301 (abolishing the separation of law and equity, the rule provides that "[t]here shall be one form of action known as 'civil action.' "). *See also Higgins,* 310 Md. at 541, 530 A.2d at 728. In *Higgins,* this Court discussed the impact of the merger on a party's right to a jury trial. Recognizing an individual's historical right to a trial by jury, we noted that Article 23 of the Maryland Constitution Declaration of Rights provides in part:

   > The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved.

   *Higgins,* 310 Md. at 542, 530 A.2d at 728–29. While acknowledging that this provision predated the 1984 merger, nonetheless, we determined that "its guarantees remain as absolute under a merged system." *Higgins,* 310 Md. at 542, 530 A.2d at 729.

   This being determined, we discussed, *inter alia,* the issue of whether a judge's inconsistent relief rendered on an equitable claim might violate an individual's jury right as to a companion legal claim. The implied concern was that the jury's factual findings on common issues could be set aside by the court, thereby circumventing an individual's constitutional right to a jury trial. To this end, we looked to analogous federal law for guidance, and quoted with approval the federal court conclusion that "the jury determination of any issue common to both legal and equitable claims should precede court consideration of the equitable issues." *Higgins,* 310 Md. at 542, 530 A.2d at 728 (citing *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). This view was subsequently confirmed in *Gramling,* 322 Md. at 543, 588 A.2d at 797 ("[F]ederal courts have held that, where

*supra* note 8.   Accordingly, I view Appellant's contention in this regard as lacking merit.   Moreover, for the reasons stated at *supra* pages 428–30, I find Appellant's assertion that he did not agree to the "possibility of inconsistent verdicts" when he requested a bench trial on counts 8 and 9 likewise to be disingenuous.

Finally, Appellant argues that the trial court improperly shifted the State's burden of proof when it credited Mr. Knox's testimony based on the absence of any "evidence that the incident occurred in anyway other than that as testified to by Mr. Knox." [14] Appellant argues that this statement indicates the court improperly focused on the "absence of other evidence," and failed to evaluate adequately the credibility of Mr. Knox's testimony.   Appellant's contention is without merit.

The trial judge, in her instructions to the jury, explained the following concerning the State's burden of proof:

> The [Appellant] is presumed to be innocent of the charges. The presumption[ ] remains with the [Appellant] throughout every stage of trial and is not overcome unless you are convinced beyond a reasonable doubt that [Appellant] is guilty.   The State has the burden of proving guilt of the [Appellant] beyond a reasonable doubt.   The burden remains on the State throughout the trial.   The [Appellant] is not required to prove his innocence.

---

equitable claims are to be resolved by the court and legal claims are to be resolved by the jury, the judge is 'without power' to reach a conclusion inconsistent with that of the jury.' ") (quoting with approval *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir.1988)).

It is clear that the need attendant in the civil context to safeguard an individual's right to a trial by jury where legal and equitable claims are combined in a single civil proceeding is inapposite in a criminal context where a defendant has properly waived his jury trial right as to those counts giving rise to the separate, but simultaneous, trials proceeding.

**14.**   Discussing the evidentiary evidence supporting its verdict, *see supra* pages 439–40 the trial court noted that "[t]here [wa]s no evidence that the incident occurred in anyway other than that as testified to by Mr. Knox," and accordingly found "Mr. Knox's testimony credible as to the[ ] salient facts."

Giving appropriate deference to the trial court's decision and because an appellate court often presumes that the trial judge understands and properly applies the law, *see Whittlesey v. State*, 340 Md. 30, 48, 665 A.2d 223, 232 (1995), I would conclude that the trial judge applied that same standard to her deliberations.

I would affirm the judgment of the Circuit Court for Baltimore City. Judges Raker and Battaglia authorize me to state that they join in the reasoning expressed in this Dissent.